John MORTON, Plaintiff-Appellee,

v.

BERMAN ENTERPRISES, INC.,
Defendant-Appellant.

No. 169, Docket 81–7265.

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 1981.

Decided Jan. 19, 1982.

As Amended on Rehearing Feb. 8, 1982.

John F. X. McKiernan, New York City (Walker & Corsa, New York City, of counsel), for defendant-appellant.

Steven Thaler, New York City (Markowitz & Glanstein, New York City, of counsel), for plaintiff-appellee.

Before LUMBARD, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

MANSFIELD, Circuit Judge:

In this personal injury action brought by seaman John Morton pursuant

to the Jones Act, 46 U.S.C. § 688, and general maritime law alleging negligence and unseaworthiness, defendant shipowner, Berman Enterprises, Inc. ("Berman"), appeals from a judgment of the Eastern District of New York by Judge Eugene H. Nickerson after a jury trial resulted in a verdict finding the vessel unseaworthy and awarding $110,600 damages and $644 maintenance and cure and from an order, 508 F.Supp. 342, denying Berman's post-trial motion for judgment notwithstanding the verdict or for a new trial. Berman advances numerous grounds on appeal, among them that the alleged accident was physically impossible, that there was no evidence of unseaworthiness, that the jury award was excessive, and that the jury's special verdict finding Berman non-negligent but the vessel unseaworthy is fatally inconsistent. We reverse the award of damages on the ground that the trial court's failure to give the requested jury charge that seaworthiness does not necessarily require an accident-free vessel or one with the best possible equipment was error and remand for a new trial.

Berman owns an oil tanker on which Morton was employed as a tankerman in the fall of 1977. Morton claims that he suffered a serious back injury on September 21, 1977, while working on Berman's tanker and attempting to connect the ship's fuel hose to the dock's intake facility in order to discharge the ship's cargo of oil. The 30-foot hose weighing 600 to 1,000 pounds is part of the tanker and is suspended by three hooks from a boom on the ship. When the tanker is berthed, the boom is swung into place over the docking facility and the hose is lowered and manipulated by the crew to line it up with the dock's intake

manifold, where it is then secured by attaching six bolts. Morton claims that on September 21 while standing under the fuel hose with his arms wrapped around it and pushing with his shoulder to create some slack, apparently a routine practice, the hose came down from the middle of the three suspension hooks and carried him to the deck, causing a snap and sharp pain in his back. There followed a series of medical visits and therapy sessions leading Morton to claim a permanent disability preventing him from continuing his sea-going career.

The crux of the case is whether the manner in which the hose was suspended from the boom constituted negligence or rendered the vessel unseaworthy. The hose was suspended from the boom at three points, each consisting of a sling wrapped around the hose with an eye-hole slipped over an open metal hook attached to the boom. Morton contends that while he was pushing the hose the middle sling slipped out of the open hook, bringing the hose to the deck. Morton called as an expert witness Captain Adams, a licensed shipmaster, who testified that open hooks "present a hazard," that "straps have come out of hooks," and that "safety hooks" (such as hooks with spring-loaded latches or with mousings) were increasingly preferred over the traditional open hooks.

At the close of trial Judge Nickerson furnished to counsel a copy of his proposed jury charge, to which Berman objected on the ground that the instructions on unseaworthiness were inadequate. Judge Nickerson charged that to be seaworthy a vessel must be "reasonably fit to permit a seaman to do his work with safety."[1] Berman argued that, in light of testimony comparing

---

1. Judge Nickerson instructed the jury as follows:

"I instruct you unseaworthiness just doesn't mean that it can't go to sea. I instruct you that a ship owner owes the seaman aboard a vessel in navigation a duty to supply a seaworthy ship, and this means that the ship and its machinery and its appliances must be reasonably fit to permit a seaman to do his work with reasonable safety. Now, it's undisputed that plaintiff is a seaman

within the definition I gave you, and at the time of occurrence in question [the ship] was in navigation; and plaintiff contends that the support for the fuel hose was unsafe or improperly designed or constructed, or that they were unfit for the use to which they were put. In particular, plaintiff contends that the hook supporting the slings which in turn supported the hose were [sic] unsafe and unfit."

open hooks with closed hooks that were available, the jury should also be instructed that seaworthiness requires neither an accident-free ship nor one with the best possible equipment. In particular, Berman submitted jury instruction requests Nos. 11 and 12:

"11. The warranty of seaworthiness does not require that a seaman be furnished an accident-proof ship, nor does it make the shipowner an insurer of the seaman's safety. *Mitchell v. Trawler Racer, Inc.* [362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960)].

"12. To satisfy the warranty of seaworthiness, a shipowner is not required to furnish the best possible ship, gear, or equipment but must simply furnish a ship, gear and equipment which is reasonably fit and suitable for its intended purpose. *Italia Societa per Azioni di Navegazione v. Oregon Stevedoring C.*, 376 U.S. 315 [84 S.Ct. 748, 11 L.Ed.2d 732] (1964)."

Judge Nickerson denied the requests on the grounds that the "reasonably fit" language in his proposed charge adequately encompassed the requested instructions, that Request No. 12 would in effect direct a verdict for the shipowner, and that if he expanded the charge beyond what the shipowner must provide to elaborate what a shipowner need *not* provide he would be involved in marshalling the evidence, supplanting the jury's judgment with his own.

After the jury returned its verdict Berman moved pursuant to Rule 50(b), F.R. Civ.P., for judgment notwithstanding the verdict or in the alternative under Rule 59 for a new trial. In his Memorandum and Order Judge Nickerson further elaborated his reasons for denying the requested charges:

"The instructions given by the court fairly state the law. There was no danger that the jury would construe 'reasonably' fit to mean 'absolutely' fit or 'accident proof'. Nothing in the *Mitchell* case suggests that under the circumstances of this case the court was obliged to say that 'reasonable' did not mean 'perfect'. In-

deed, a simple addition to the charge of defendant's requests might have misled the jury into supposing that as a matter of law an open hook was wholly appropriate. But the jury was free to determine that in the circumstances a hook that could not slip off was the only hook reasonably fit.

"If the court had granted defendant's requests, to prevent a misconception the court would also have had to point out other considerations bearing on the reasonableness of using open hooks. For the court to discuss evidentiary details (such as the miniscule cost of spring loaded hooks) seems unwise. There is a risk of omitting matters which jurors may properly take into account. Furthermore, as noted above, to reach a 'reasonable' result the law seeks to draw on the joint experience of the jurors rather than the views of a single judge. By emphasizing only factors which it deems important the court may trench upon the function of the jurors."

We disagree with Judge Nickerson's reasoning and hold that the requested "negative" instructions should have been given.

The district court's jury charge on unseaworthiness employing the "reasonably fit" standard was an accurate statement of law as far as it went. However, in our view it did not go far enough. The requested negative instructions are taken directly from the Supreme Court's opinions articulating the unseaworthiness doctrine, *Italia Societa v. Oregon Stevedoring Co., Inc.*, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); *Boudoin v. Lykes Brother Steamship Co., Inc.*, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354, *amended*, 350 U.S. 811, 76 S.Ct. 38, 100 L.Ed. 727 (1955), whose language has been repeated on numerous occasions by this and other Circuits. See, e.g., *Rice v. Atlantic Gulf & Pacific Co.*, 484 F.2d 1318 (2d Cir. 1973); *Oliveras v. American Export Isbrandtsen Lines, Inc.*, 431 F.2d 814 (2d Cir. 1970); *Stevens v. East-West Towing Co., Inc.*, 649 F.2d 1104 (5th Cir. 1981); *Dunlap v. G. & C. Towing, Inc.*, 613 F.2d 493 (4th

Cir. 1981) (quoting *Rice v. Atlantic Gulf & Pacific Co., supra*); *Reinhart v. United States*, 457 F.2d 151 (9th Cir. 1972). See also, Devitt & Blackmar, *Federal Jury Practice and Instructions* § 96.17 ("The defendant is required to provide equipment which is only reasonably fit; the latest and most modern equipment is not required, so long as the equipment provided is reasonably fit for its intended purpose.").

The requested negative instructions are needed to emphasize that, although unseaworthiness is a broader form of liability than negligence and has been characterized as "a form of absolute liability," *Mitchell, supra*, 362 U.S. at 549, 80 S.Ct. at 932, it does not impose a duty of perfection on shipowners. While in theory the "reasonably fit" instruction by itself may convey this, there is the danger that the jury may wrongfully equate seaworthiness with a duty to provide accident-proof or the best possible equipment. The Supreme Court itself in *Mitchell* implicitly acknowledged this danger when it felt the need to add the following caveat after elaborating the nature of unseaworthiness liability:

"What has been said is not to suggest that the owner is obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every peril of the sea, but a vessel reasonably suitable for her intended service." 362 U.S. at 550, 80 S.Ct. at 933.

The need for the negative instructions was especially acute in the instant case, in view of the extensive trial testimony comparing open hooks with other types of hooks available. The proper inquiry for the jury was not which hooks were safer, but whether the open hooks actually used were reasonably safe. The requested negative instructions, while permitting the jury to take into account the availability of safer hooks, would guard against the jury's focusing excessively on, or being misled by, their existence or availability.

We disagree with the trial judge's conclusion that giving the requested negative instructions "might have misled the jury into supposing that as a matter of law an open hook was wholly appropriate." The substance of the request was that as a matter of law seaworthiness does not *necessarily* require an accident-free vessel or one with the best possible equipment. This charge leaves it open to the jury to find that, on the facts of a particular case, the safest technology is the only reasonable one.[2] Similarly, we find unfounded the trial judge's concern that giving the negative instructions would require additional instructions concerning other evidentiary details relating to reasonableness. The requested instructions, combined with the court's "reasonably fit" charge and its general charge on reasonableness, would have been sufficient.

■■ Berman's contention that it is entitled to a new trial because of an alleged inconsistency between the jury's finding that Berman was not negligent and its finding that the ship was unseaworthy is rejected. The argument is predicated on the theory that since in this case the proof of negligence and of unseaworthiness was the same a finding of no negligence would preclude a finding of unseaworthiness. We disagree. A verdict of unseaworthiness may stand even though it may according to strict logic appear inconsistent with a finding of no negligence. *Waldron v. Moore-McCormack Lines, Inc.*, 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967). In any event, there was no inconsistency here for

2. The wording of jury instruction requests Nos. 11 and 12 is slightly ambiguous in this regard, since the requests may be interpreted to preclude a jury from ever finding that seaworthiness requires the best possible equipment. To eliminate this ambiguity the word "necessarily" should be added before the word "require" in No. 11 and "required" in No. 12. This clarifies that while seaworthiness is not identical with accident-free or best possible equipment, there may be occasions where what is reasonably fit, hence seaworthy, does coincide with accident-free or best possible equipment.

the reason that, as charged, the elements of notice and foreseeability required to prove negligence were not essential to establish the broader concept of unseaworthiness, which was based solely on unfitness of the equipment for its intended purpose. We find no merit in appellant's remaining contentions.

We hold that the requested negative instructions that seaworthiness does not necessarily require an accident-free vessel nor one with the best possible equipment should have been given. The judgment awarding damages is reversed and remanded for a new trial. The award for maintenance and cure is affirmed.