**Charles W. HELLER, Plaintiff,**

v.

**L.F. ROTHSCHILD, Unterberg, Towbin and Lawrence F. Rice, Defendants.**

No. 85 Civ. 5925 (CSH).

United States District Court,
S.D. New York.

April 3, 1986.

David Jaroslawicz, New York City, for plaintiff.

Gaston, Snow, Beekman & Bogue, New York City, for defendants; Martin P. Unger, Andrew Levchuk, of counsel.

HAIGHT, District Judge:

In this case, plaintiff Charles W. Heller alleges the churning of his investment account, in violation of the federal securities laws prohibiting fraud. The individual defendant Lawrence F. Rice, is the broker with whom plaintiff dealt. Rice was employed by the brokerage firm of L.F. Rothschild, Unterberg, Towbin ("Rothschild"), the latter's asserted liability being that of a "control person" over Rice. Securities Exchange Act of 1934, 15 U.S.C. § 78t. The complaint alleges that plaintiff maintained a brokerage account with

Rothschild from October 1984 through May 1985.

Defendants moved to dismiss the original complaint for failure to allege fraud with that degree of particularity required by Rule 9(b), F.R.Civ.P. Plaintiff did not resist that motion. Instead, he filed and served an amended complaint. Defendants now move to dismiss that pleading, on the ground that the amendments do not cure the Rule 9(b) deficiencies. Defendants also ask that the Court deny leave to replead.

■ Churning is a deceptive device within § 10(b) of the 1934 Act and Rule 10b–5 for which a private cause of action for damages will lie. Churning occurs when a securities dealer induces transactions in his customer's account which are contrary to the customer's instructions, disproportionate to the size and character of the account, and indulged in to create commissions for the dealer. *Newburger Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1069 (2d Cir.1977), *cert. den.,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). More recently, the Second Circuit has characterized "churning" as a synonym for "overtrading," defining the practice as "the excessive rate of turnover in a controlled account for the purpose of increasing the amount of commissions." *Armstrong v. McAlpin,* 699 F.2d 79, 90 (2d Cir.1983).

■ Because of a charge of churning is a charge of fraud, the complaint must comply with Rule 9(b). *Todd v. Oppenheimer & Co., Inc.,* 78 F.R.D. 415, 423–24 (S.D.N.Y.1978). "To establish a claim for churning a plaintiff must plead and prove (1) that the trading in the account was excessive in light of his investment objectives, (2) that the broker exercised control over the account, and (3) that the broker acted with intent to defraud or with willful and reckless disregard for the interests of his client." *Moran v. Kidder Peabody & Co.,* 609 F.Supp. 661, 666 (S.D.N.Y.1985).

■ It is generally held that "conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough," *Decker v. Massey Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982); and that even though the rule requiring partic-ularity in pleading "is relaxed as to matters particularly within the adverse party's knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief [of fraudulent conduct] is founded." *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). In a case of alleged churning, the plaintiff "must set forth facts that allow the determination of whether or not trading was excessive." *Moran, supra,* at 666. Discovery in aid of fleshing out a pleading alleging fraud is not favored. *Segal, supra,* at 609; *see also Blue Chips Stamp v. Manor Drug Stores,* 421 U.S. 723, 741, 95 S.Ct. 1917, 1928, 44 L.Ed.2d 539 (1975).

With these principles in mind, I consider the amended complaint in the case at bar.

I agree with the defendants that the amended complaint does not sufficiently allege the dialogue between the parties, and the nature of their relationship.

■ As noted *supra,* the first element of a claim for churning is that the trading in the account was excessive in the light of the plaintiff's investment objectives. Subsumed within this element are the precise instructions given by the investor to the broker, and the responses made by the broker to the investor, upon which the latter claims to rely. Even though it is the broker's declarations and actions which are said to be fraudulent, it is important to know what the investor said to the broker to elicit those responses, particularly since fraud may consist of omissions as well as affirmative statements. In order that a broker and his employer may adequately comprehend and defend against the charge of fraud, a plaintiff alleging fraud by churning should allege specifically what instructions he gave to the broker or other representative of the corporate defendant; to whom those instructions were given; on what dates they were conveyed; and whether they were oral, in writing, or both. The plaintiff in such an action should allege, with comparable particularity, what his own investment experience was, and what information he conveyed on that subject to the broker, with comparable detail.

■ Secondly, the plaintiff should allege with comparable particularity the responses or assurances made by the broker or on behalf of the brokerage house which plaintiff alleges were fraudulent.

■ The second element relates to whether or not the broker exercised control over the account. Most frequently, this involves whether or not the broker had discretionary control over the investor's account. If that is the fact, the investor must specifically allege it to be so. Judge Sweet so held in *Moran, supra*, at 666, going on to observe:

> Where a customer has the independent capacity to accept or reject his broker's recommendations, he cannot accuse his broker of having control of his account even if he habitually follows his broker's recommendations.

For that proposition, Judge Sweet cited *Follansbee v. Davis, Skaggs & Co.*, 681 F.2d 673 (9th Cir.1982). *Follansbee* contemplates two sorts of account controlled by a broker:

> If a broker is formally given discretionary authority to buy and sell for the account of his customer, he clearly controls it. Short of that, the account may be in the broker's control if his customer is unable to evaluate his recommendations and to exercise an independent judgment.

681 F.2d at 676–77.

The Ninth Circuit in *Follansbee*, reviewing authorities on the point, cited the Second Circuit's opinion in *Newburger, Loeb & Co., Inc. supra*, at 1070 ("If a customer is fully able to evaluate his broker's advice and agrees with the broker's suggestions, the customer retains control of the account.") *Follansbee* at 677.

■ The present complaint alleges plaintiff's lack of sophistication in general terms (¶ 7). While ¶ 48 of the complaint refers to pre-purchase conversations between plaintiff and defendant Rice on at least some occasions, the concept of "effective control of the account" is alleged in conclusory terms. Plaintiff must allege specifically whether or not this was a discretionary account; and, if it was not, defendants are entitled to a more particular series of allegations on the element of control.

■ The third element is that the broker acted with intent to defraud or with willful and reckless disregard for the interests of his client. Here, the present pleading stands upon firmer ground. If, for example, plaintiff is in a position to allege (consistent with the strictures of Rule 11), that he was an unsophisticated investor who gave particular instructions to Rice that his investment objectives were to pursue safety and eschew speculation, and that Rice signified his understanding of those instructions and intent to abide by them, then the particular transactions which plaintiff alleges in ¶ 29 of the amended complaint appear questionable. How, for example, does one square with the stated objectives the purchase of 12,000 shares of Advanced Microdevices on January 29, 1985 and their sale on the following day? Amended Complaint, ¶ 29(d). This is typical of the specific transactions which plaintiff alleges in support of his claim for churning. These allegations are sufficient in respect of pleading the third element; it is not necessary to allege misrepresentation of the withholding of material facts. As the Second Circuit observed in *Armstrong, supra*, at 669 F.2d 91:

> Churning, in and of itself, may be a deceptive and manipulative device under section 10(b), the scienter required by section 10(b) being implicit in the nature of the conduct.

Excessive trading in an account may be inferred from such transactions, or an annual turnover rate in excess of recognized limits. *Rush v. Oppenheimer & Co., Inc.*, 592 F.Supp. 1108, 1112 (S.D.N.Y.1984). In my judgment, the amended complaint adequately alleges the third element.

■ But the deficiencies noted above remain. For these reasons, the Clerk of the Court is directed to dismiss the amended complaint for failure to conform with Rule 9(b). Plaintiff is granted leave to file and serve a further amended complaint within thirty (30) days of the date of this opinion. I will not grant plaintiff dis-

covery in order to frame a new pleading. It would appear that plaintiff did not retain all of the transaction slips. An investor may not discard transaction slips or other important advices sent to him by his broker and then, claiming an inability to be specific, charge the broker with fraud and seek production of the documents to prove the charge. The investor must be in a position, at the time he makes the charge, to plead facts which if proven establish fraud or the basis for its reasonable inference. Of course, if the further amended pleading survives any further challenge of legal sufficiency, additional transactions may be inquired into during the normal pre-trial discovery process.

Motion to dismiss amended complaint granted, with leave to replead. It is SO ORDERED.