Foster WOODRUFF, Conservator of the
Estate of Reginald D.
Woodruff, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC., Defendant.

No. CV88–L–314.

United States District Court,
D. Nebraska.

Jan. 10, 1989.

Woods, Fuller, Shultz & Smith P.C., Arlo Sommervold, Sioux Falls, S.D., and Hecht, Sweet, Alesio, Morrow, Poppe & Otte, P.C., Terrance A. Poppe, Lincoln, Neb., for plaintiff.

Kutak, Rock & Campbell, Lindsey Miller–Lerman and Kathleen M. Quinn, Omaha, Neb., Frank A. Taylor, New York City, for defendant.

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STRIKE AND MAKE MORE DEFINITE AND CERTAIN

URBOM, District Judge.

Foster Woodruff, the personal representative of the estate of Reginald D. Woodruff, filed a complaint alleging that various

activities of the defendant violated section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, that they constituted a breach of a fiduciary duty owed to Reginald, and that they constituted a pattern of racketeering activity in violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68. The defendant filed a motion to dismiss or, in the alternative, to strike and make more definite and certain, filing 11.

## FIRST CLAIM

The defendant's challenge to the complaint's first claim need not be discussed, except to record that the plaintiff, in his brief in opposition to the defendant's motion, withdrew the claim regarding the voidable nature of the standard option agreement and its arbitration clause. In reliance upon the statement made by the defendant in this brief in support of its motion, that the defendant has no present intention of filing a motion to compel arbitration, the plaintiff agreed to withdraw the claim. Thus, the first claim is withdrawn.

## SECOND CLAIM

The defendant's challenge to the complaint's second claim presents a more complicated problem. The defendant contends that the plaintiff failed in his second claim to plead fraud with the particularity required by Fed.R.Civ.P. 9(b). The defendant seeks the dismissal of the claim or the filing of a more definite statement of the claim. The defendant correctly identified the gravamen of the second claim to concern churning.

In arguing for dismissal, the defendant argues that the plaintiff should be required to identify the securities involved, the amounts involved and the dates of the transactions at issue. Further, the defendant argues that Woodruff must allege facts sufficient to allow for a determination of the turnover ratio in the account and/or the percentage of the account value paid in commissions. The company asserts that the claim should also detail the instructions that the investor gave to the broker and any responses given by the broker upon which the investor relied. The complaint the defendant contends, should make clear whether the broker had control over the account, and, if so, the extent of that control, including an allegation stating whether the account was discretionary. Finally, the defendant maintains that the plaintiff is required to allege facts sufficient to show scienter.

In opposition to the defendant's motion as to this second claim, the plaintiff emphasizes the need for the court to read the requirements of Rule 9(b) and Rule 8 together. I acknowledge the value of such a reading. The plaintiff argues that it is the aggregation of transactions in relation to the investor's investment objectives and the market conditions that is pertinent to a churning claim. He also seems to agree with the plaintiff somewhat in stating that at the least, "a rough ascertainment" of the turnover ratio or the percentage of the account value paid in commissions is necessary. The plaintiff contends that the allegations in the second claim are sufficiently clear, that they set forth the facts regarding the alleged fraud, and they state a claim upon which relief can be granted.

The Eighth Circuit has yet to consider the requisite elements for pleading a churning claim under the Securities Exchange Act, but the court has discussed the basis of the theory in a case that centered upon commodity futures trading. In *Booth v. Peavey Company Commodity Services*, 430 F.2d 132, 133 (8th Cir.1970), the court stated that "[t]o establish churning, it is necessary to prove that the dealer has control of the account and that there has been excessive trading in it." The court continued:

Whether or not trading in an account has been excessive is a fact question which cannot be determined by any precise rule or formula.

"The essential question of fact for determination is whether the volume and frequency of transactions, considered in the light of the nature of the account and the situation, needs and objectives of the customer, have been so 'excessive' as to indicate a purpose of the broker to derive profit for himself

while disregarding the interests of his customer."

*Hecht v. Harris, Upham & Co., supra,* 283 F.Supp. [417] at 435 [N.D.Cal. 1968]. . . .

In attempting to make this subjective determination, the SEC and the courts often look to the more objective criteria of turnover ratio, nature of the trading and the dealer's profits.

*Id.* at 134. Though no recent cases in the Eighth Circuit add to the explanation in *Booth,* other cases have outlined the pleading requirements.

In *Moran v. Kidder Peabody & Co.,* 609 F.Supp. 661, 666 (S.D.N.Y.1985), the court stated:

set forth a statement of fact which would permit a determination of either the turnover ratio in the account and/or the percentage of the account value paid in commissions.

*Id. See also Bergen v. L.F. Rothschild, Unterberg, Towbin,* 648 F.Supp. 582, 586 (D.D.C.1986). Later cases from the same district as *Baselski* have added the requirements of identification, nature and amount of transactions. *See Russo v. Bache Halsey Stuart Shields, Inc.,* 554 F.Supp. 613, 618 (N.D.Ill.1982) The requirement of pleading facts sufficient to establish these relationships is imposed to avoid the inclusion of long lists of securities, transaction descriptions and dates in complaints. The *Siegel* court, *supra,* recognized that "[i]t is not necessary for a plaintiff who alleges a churning claim to set out each and every transaction he contends was excessive" [and that w]hether defendants churned the plaintiff's account is determined by examining the account activity for the relevant time period as a whole. *Siegel,* 658 F.Supp. at 554.

To establish a claim for churning a plaintiff must plead and prove (1) that the trading in the account was excessive in light of his investment objectives, (2) that the broker exercised control over the account, and (3) that the broker acted with intent to defraud or with willful and reckless disregard for the interests of his client.

*Id. See also Siegel v. Tucker, Anthony & R.L. Day, Inc.,* 658 F.Supp. 550, 553 (S.D. N.Y.1987); *Viscomi v. Paine, Webber, Jackson & Curtis, Inc.,* 596 F.Supp. 1537, 1538 (S.D.Fla.1984) (*quoting Miley v. Oppenheimer & Co.,* 637 F.2d 318, 324 (5th Cir.1981);

The defendant relies upon the court's explanation of *Moran's* three requirements found in *Heller v. L.F. Rothschild, Unterberg, Towbin,* 631 F.Supp. 1422 (S.D.N.Y. 1986). The *Heller* court acknowledged the importance of including allegations regarding the investor's instructions to the broker, to whom they were conveyed and when; the broker's responses, and any information regarding the investor's own experience in stock trading and the financial markets. The court indicated that the inclusion of this information in a complaint may establish the element of excessive trading. *Id.* at 1424. The *Heller* court also noted that the allegations regarding the extent of the broker's control over the account should explicitly state whether the account was discretionary and if it was not,

then the allegations should outline the manner in which the broker exercised control over the account and the reason for the investor's acquiescence in the broker's activities. *Id.* at 1425.

The court in *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 540 (N.D.Ill.1981), stated that a plaintiff who bases a claim on churning should, at a minimum:

The case primarily relied upon by the plaintiff is *Polera v. Altorfer, Podesta, Woolard & Co.,* 503 F.Supp. 116, 118 (N.D. Ill.1980), which requires plaintiff to identify the securities involved and to provide a statement of facts sufficient to permit, "at the very least, a rough ascertainment" of the turnover ratio or the percentage of the account's value paid in commissions. At a minimum then, I shall require this of Woodruff's complaint.

The turnover ratio was defined by the Eighth Circuit as the ratio of the total cost of purchases made for the account during a given period of time to the average investment in the account. *Booth,* 430 F.2d at

135, n. 1. Relying upon the same article as did the Eighth Circuit in *Booth*, the *Baselski* court explained the percentage requirement:

> Although there is not standard for determining whether a dealer's profits are excessive, the comparison is relevant 'because the nub of the offense in overtrading consists of the taking of repeated profits on a number of transactions conferring no advantage to the customer.

*Baselski*, 514 F.Supp. at 541, n. 5 (quoting "Note, Churning by Security Dealers," 80 *Harv.L.Rev.* 869, 877 (1967)).

■ I shall first consider whether the allegations sufficiently plead excessive trading. Woodruff alleged the market value of Reginald's account at the year's end in 1983, 1984, 1985, 1986 and after October 30th of 1987. He alleged the amounts of Reginald's deposits and withdraws for each year, and the amount of the broker's purchases and sales for the account in each year beginning in 1984. He states that "in slightly less than four years of trading, the Defendant engaged in 1,503 transactions with the Protected Person's stock account totaling $7,122,376.80." *Id.* at IV, pp. 7–8.

The complaint also alleges that from July 1983 to October 1987, the defendant purchased 15 limited partnerships at a cost of $204,000. The plaintiff alleges that a result of the excessive trading was that the defendant received commissions of $25,-522.17 in 1984; $44,426.25 in 1985, $96,058,-77 in 1986, and $38,541.47 from January 1st through October 30th of 1987. In the eighth paragraph, the plaintiff outlines three specific examples of the transactions that it alleges constitute churning. Except for these three examples, I note that the allegations do not identify the securities at issue. The allegations do set out, in general terms, the amounts at issue and the dates at issue.

I find that the allegations set forth in these paragraphs do not provide facts sufficient to permit the court or the defendant to ascertain roughly the turnover ratio. The ratio consists of the total cost of purchases made for the account during a given period of time, which was alleged to be

$7,122,376.80 from 1984 through October 30th of 1987, to the average investment in the account, which is not provided in the complaint. Although the complaint provides numerous specifics about the values of the accounts at each year's end, I find that these numbers do not provide the information necessary to calculate the ratio.

Additionally, though the complaint identifies the amounts that the defendant received in commissions for each of the years in issue, the complaint does not provide the account's value over each year. I shall not substitute the value of the account on the last day of each year for the value of the account over the entire year. Absent a list of each transaction that the plaintiff alleges was churned, I conclude that the ratio or the percentage must be discernable from the complaint. Accordingly, I conclude that Woodruff has failed to allege facts sufficient to establish the element of excessive trading.

Woodruff also stated in his second claim that Reginald Woodruff was very inexperienced and unsophisticated in securities trading and that he had instructed the defendant to maintain a portfolio consisting of conservative, income-producing securities. Woodruff alleges that Reginald Woodruff relied upon the defendant to manage his account in his best interests. *See* paragraph II, pp. 4–5. He does not state whether the account was discretionary. I conclude that an allegation regarding whether the account was discretionary, and, if it was not, then allegations outlining the manner in which the defendant or its agent exercised control over the account must be pleaded.

Though I find that Woodruff properly pleaded the scienter requirement, this does not save the complaint from the deficiencies discussed above. For those reasons, I shall permit the defendant to submit an amended complaint as to the second claim.

Another objection to the plaintiff's second claim is the references to the National Association of Security Dealers. The defendants claim that the references are impertinent and immaterial because no private right of action is afforded by those

rules. Given the plaintiff's response to the objection, that the standards are referenced only for evidentiary purposes and not as the basis for any claim made by him, I conclude that it is proper to exclude the references to the NASD as immaterial.

## THIRD CLAIM

 The third claim alleges that the defendants violated a fiduciary duty that it owed to Reginald Woodruff as his broker. The defendants rely upon *Leib v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 461 F.Supp. 951, 952–53 (E.D.Mich.1978), which discussed the importance of knowing whether the account was discretionary or non-discretionary in determining the extent of the fiduciary duty owed by a broker. The defendant argues that Woodruff has failed to allege whether the account was discretionary, and, assuming that it was not, Woodruff has failed to plead sufficient particular facts that show the extent of the fiduciary relationship between the broker and Woodruff.

The plaintiff contends that the complaint is sufficient. Relying upon *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 418 (9th Cir.1984), Woodruff argues that by virtue of the position of the defendant as a securities broker to the plaintiff as an investor, a fiduciary relationship existed and the defendant owed Reginald a duty. The plaintiff also points out that the *Leib* case is inapplicable to the motion because the court was considering the extent of the fiduciary duty owed after a trial on the matter had concluded.

Because the extent of the fiduciary duty owed to Woodruff by his broker directly correlates to the amount of control that the broker had over the account, I reiterate here the need for more detailed allegations as to control. Provided that the plaintiff includes in his second claim allegations regarding whether or not the account was discretionary and, if not, then the manner in which the broker exercised control over the account, I find that such allegation will make his claim more definite and there will be no need to order an alteration of the plaintiff's third claim.

## FOURTH CLAIM

The fourth claim alleges that the defendant's actions constituted "a violation of RICO, 18 U.S.C. § 1961 et seq." A difference in construction surfaced during the briefing of the motion in that the defendant's original brief in support of its motion assumed that the plaintiff was proceeding under section 1962(c) which requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed. 2d 346 (1985). After the plaintiff responded to the motion to dismiss the fourth claim for failure to state a claim under section 1962(c), the plaintiff submitted a supplemental brief on the issue, stating that the plaintiff is proceeding under section 1962(c) and 1962(a).

The defendant's reply brief points out that the elements required to prove a claim under section (a) are the same as are required under section (c).

> Sections (a) and (c) of 1962 require the presence of the same elements—conduct of an enterprise, a pattern of racketeering activity, and a person. Only the relationship among these elements differs. Section (c) envisions racketeering acts conducted through an enterprise, whereas section (a) portrays the enterprise and the investment object of the criminal violators.

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 648 F.Supp. 419, 428 (D.Minn.1986) *aff'd* 829 F.2d 648 (8th Cir.1987).

### Pattern Requirement

 The defendant seeks dismissal of the plaintiff's RICO claim based upon the plaintiff's alleged failure to plead the "enterprise" and "pattern" requirements. In support of its motion, the defendant relies upon *Deviries v. Prudential–Bache Securities, Inc.*, 805 F.2d 326, 329 (8th Cir.1986), and other Eighth Circuit precedent. The plaintiff in *Deviries* had alleged that the "defendants made fraudulent misrepresentations to secure his account and then 'churned' the account by recommending transactions unsuitable to Deviries's investment needs." *Id.* at 327. The *Deviries*

court held that the plaintiff failed to allege the continuity necessary to establish a "pattern" of racketeering. The court stated:

> Putting to one side the sufficiency of his allegations of a RICO "enterprise" and assuming *arguendo* that he could establish several related acts of fraud, we hold that Deviries still has failed to allege the continuity necessary to establish a pattern of racketeering activity.... If proven, defendants' actions at worst would comprise one scheme to generate excessive sales commissions by recommending unsuitable investments and churning Deviries's account. This is insufficient to state a RICO claim.... Absent allegations sufficient to establish a true "pattern" of related but distinct schemes of fraud, Deviries's complaint fails to meet one of the required elements of a civil RICO claim.

*Id.* at 329. I find *Deviries* be very convincing authority on the issue.

The plaintiff defends his complaint by pointing out that he has alleged that 1,503 separate acts of fraud were committed by the defendant. Additionally, he states in his brief that the same defendant has been found liable to Ethlyn Davis' estate as a result of fraudulently trading in her account, and he states that there is a likelihood that other accounts will be churned because Bruno is still employed my the defendants. These statements apparently are offered in order to demonstrate the necessary continuity. To do so, the plaintiff must allege that the defendants engaged in similar endeavors in the past or had engaged in other criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 829 F.2d 648, 650 (8th Cir.1987) (*quoting Deviries, supra.*)

I shall make no finding as to whether those statements would satisfy the continuity prong or whether they demonstrate only sporadic acts because statements made in briefs are not part of the pleadings and, therefore, I may not consider them. I conclude that the complaint fails to adequately plead the "pattern" requirement under RICO. *See Deviries, supra.*

### Enterprise Requirement

■ The defendant also argues that the complaint failed to set forth facts sufficient to establish an enterprise under the statute. Relying on *Bennett v. Berg*, 685 F.2d 1053, 1089 (8th Cir.1982), the defendant argues that the plaintiff's failure to allege the existence of an enterprise separate from the person is a fatal defect, and that if the plaintiff attempts to hold the defendant liable for the alleged wrongdoing of Bruno, then the plaintiff must fail under *Luthi v. Tonka Corp.*, 815 F.2d 1229, 1230 (8th Cir.1987). The *Luthi* court agreed with another court's conclusion that "corporations will not be held liable under RICO based solely on the *respondeat superior* doctrine." *Id.*

The plaintiff primarily relies upon other circuit's cases and upon *United States v. Lemm*, 680 F.2d 1193, 1201 (8th Cir.1982), in arguing that he has properly pleaded the enterprise requirement. I do not find *Lemm* helpful in reaching a decision about the distinction between person and enterprise. The distinction that needs to be made in this case is not whether the defendant is a legal enterprise or an enterprise in fact for purposes of RICO, but whether the "enterprise" and "person" may be the same.

The district court in Minnesota also determined that section 1962(a), in light of *Bennett v. Berg*, 685 F.2d at 1089, the statute required that that the enterprise must be acted upon by a distinct person. *H.J. Inc.*, 648 F.Supp. at 427–28. I agree with the *H.J.* court's statement that nothing in *Bennett* indicates that the Eighth Circuit would make any distinction between the "enterprise" and "person" requirement under sections (a) and (c). *Id.* at 428. Accordingly, I find that the allegations, as they now stand, fail to state a claim upon which relief can be granted under either section 1962(a) or section 1962(c).

### AGENCY

■ The defendant contends that the plaintiff has failed to set forth facts to sufficiently establish an agency relationship between Paul Bruno and the defendant. Though the allegation that "[t]he

defendant, through the account executive handling the Protected Person's account, Paul Bruno, and his superiors," connotes that some authority was bestowed upon Bruno, I agree with the defendant that they deserve a more definite statement of the relationship. Specifically, the allegations could more specifically describe whether Bruno was acting in the scope of his authority and what type of authority he had.

## STATUTE OF LIMITATIONS

The defendants also seek dismissal of any portion of the claims of wrongdoing that occurred at a time precluded by the applicable statutes of limitation. The parties seem to agree on the applicable statutes of limitations,[1] but the defendants seeks dismissal of certain claims because they occurred outside the limitations period and because Woodruff failed to plead facts sufficient to establish the federal tolling doctrine of fraudulent concealment, citing *Campbell v. Upjohn Co.*, 498 F.Supp. 722, 727 (W.D.Mich.1980).

The plaintiff argues that the equitable tolling doctrine applied in the Eighth Circuit is stated in *Vanderboom v. Sexton*, 422 F.2d 1233, 1240 (8th Cir.) *cert. denied* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). That court stated that the statute of limitations runs "only from the date of discovery of the fraud or from the date the fraud upon reasonable inquiry should have been discovered." Reference was recently made to this doctrine in *Deviries, supra*, and I adopt it as my guide. The plaintiff again attempts to avoid the pleading requirements by explaining the reason for the lateness of his discovery of the fraud in his brief. I find that the explanation needs to be made in allegations in the complaint that fulfill the requirements of the equitable tolling doctrine and Neb.Rev.Stat. § 25-222 (Reissue 1985).

For all of the reasons stated in the accompanying memorandum,

IT IS ORDERED that the defendant's motion to dismiss, filing 11, is granted and that the plaintiff is granted leave to file an amended complaint by January 31, 1989.

---

1. Two years for section 10(b) and Rule 10(b)–5 claims; four years for RICO claims; and two years for breach of a fiduciary duty claims.