Nicola ROCCO and Ida Rocco

v.

PAINEWEBBER, INC.

Civ. No. N–88–509 (AHN).

United States District Court,
D. Connecticut.

April 12, 1990.

Benson A. Snaider, New Haven, Conn., for plaintiff.

Ralph G. Elliot, Kevin McCann, Tyler, Cooper and Alcorn, Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS

NEVAS, District Judge.

The facts of this case were set out in this court's ruling on a prior motion to dismiss, *Rocco v. PaineWebber, Inc.*, No. 88–509, slip op. (D.Conn. May 12, 1989)(Nevas, J.),

and will be reiterated here only when necessary. In that ruling, this court dismissed the counts of fraud under sections 10(b) and 20 of the Securities Exchange Act of 1934 (15 U.S.C. Sections 78j(b) & 78t (1988)) and Rule 10b–5, 17 C.F.R. Section 240.10b–5. The court, however, gave leave to the plaintiff to amend these counts, and plaintiff subsequently did so. The defendant, PaineWebber, Inc. ("PaineWebber"), now renews its motion to dismiss the amended complaint pursuant to Rule 12(b)(6)[1], Fed. R.Civ.P., and on the ground that the plaintiffs have again failed to plead fraud with the degree of particularity required by Rule 9(b), Fed.R.Civ.P. Defendant further asserts that if the court grants its motion to dismiss these counts, that the court should also decline to exercise its pendent jurisdiction over the plaintiffs' remaining state-law claims. For the following reasons, defendant's motion is granted.

### Discussion

#### A. *Rule 9(b), Fed.R.Civ.P.*

Rule 9(b), Fed.R.Civ.P. requires that "[i]n all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." In the context of securities fraud action, three purposes underlie the particularity requirement of Rule 9(b); the requirement (1) provides a defendant with fair notice of the plaintiff's claim, enabling preparation of an adequate defense; (2) protects a defendant from unwarranted harm to his reputation or good will; and (3) discourages strike suits. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *see also Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). Intent and knowledge, however, do not have to be alleged with great specificity. *Connecticut Nat'l Bank*

---

1. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., the court accepts as true all well-pleaded facts, *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977), and construes

the allegations of the complaint in the light most favorable to the plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

*v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987). Nonetheless, where scienter is an element of the cause of action, " '[i]t is reasonable to require that the plaintiffs specifically plead those events' which 'give rise to a strong inference' that the defendants had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Id.* (quoting *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980)).

PaineWebber argues that the plaintiffs have failed to satisfy Rule 9(b) in at least two respects. First, the defendant contends that the one allegation of misrepresentation pleaded does not support an inference of fraud. Second, the defendant argues that the plaintiffs' churning allegations are conclusory in nature. Each contention will be discussed in turn.

### 1. *Misrepresentation*

■ According to the plaintiffs' amended complaint, Frank A. Vandever ("Vandever"), a broker employed by PaineWebber, misrepresented to the plaintiffs that he and PaineWebber would invest the plaintiffs' money "in a safe conservative investment, which would guaranty the preservation of principal without loss or deduction in any way." Amended Complaint para. 2. Though on a motion to dismiss based on Rule 9(b) a court must read the complaint as a whole and draw all reasonable inferences in favor of the pleader, *see Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir.1985), the purported misrepresentation still does not comply with the dictates of Rule 9(b).

The plaintiffs' complaint now specifies the time, place, speaker, and, to a certain extent, content of the alleged misrepresentation. *See DiVittorio*, 822 F.2d at 1247. There still remains, however, "a dearth of facts from which an inference can be drawn that the misrepresentation was false and, even more importantly, that PaineWebber had knowledge of the falsity or recklessly disregarded its existence." *Rocco*, No. 88–509, slip. op. at 8. The complaint alleges investments in "a Paine Web-

ber [sic] High Yield Fund and the purchase of securities in Pepsico Inc. and Unilever N.V." Amended Complaint para. 7. Plaintiffs also intimate that such investments were not conservative, *id.* para. 8, and that they were "inappropriate and unsuitable." *Id.* para. 11. These allegations are insufficient to show that Vandever's "misrepresentation" was false. Surely, virtually every investment entails some degree of risk, otherwise a return on said investment would simply be gratuitous. Moreover, the volatility of the market at the time surrounding plaintiffs' stock investments (roughly July to December 1987) was such that the stability of even the most conservative investments was not unshaken by the stock market crash in October. Regardless, while Vandever's conduct may have constituted a breach of fiduciary duty or a breach of contract, said conduct, without more, cannot be converted into a fraud claim. *See Pross v. Baird, Patrick & Co.*, 585 F.Supp. 1456, 1460 (S.D.N.Y.1984).

The complaint also alleges that the acts and conduct of PaineWebber, through Vandever, were done "knowingly with intent to deceive and defraud." Amended Complaint para. 14. While Rule 9(b) allows intent and knowledge to be averred generally, plaintiffs are not relieved of "their burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter." *Connecticut Nat'l Bank*, 808 F.2d at 962. Yet the complaint contains only the above quoted bald assertions, and is devoid of any circumstances supporting these conclusions. Thus, without more, the plaintiffs' allegations concerning scienter are inadequate.

### 2. *Churning*

■ As mentioned, the defendant also argues that the churning allegations are fatally inadequate. Churning occurs when a securities broker or dealer excessively trades in a customer's account for the purpose of increasing commissions. *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir.1983); *Van Alen v. Dominick & Dominick, Inc.*, 560 F.2d 547, 549 (2d Cir.1977). More simply, churning is "overtrading."

*Armstrong*, 699 F.2d at 90. Because an allegation of churning is an allegation of fraud, the complaint must satisfy the requirements of Rule 9(b). *Heller v. L.F. Rothschild, Unterberg, Towbin*, 631 F.Supp. 1422, 1424 (S.D.N.Y.1986).

To survive a Rule 9(b) motion to dismiss a churning claim, a plaintiff must allege "(1) that the trading in his account was excessive in light of his investment objectives; (2) that the broker exercised control over the account; and (3) that the broker acted with intent to defraud or with willful or reckless disregard for the interests of his client." *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 639 F.Supp. 1391, 1394 (S.D.N.Y.1986) (citations omitted). The plaintiff "should allege specifically what instructions he gave to the broker or other representative of the corporate defendant; to whom those instructions were given; on what dates they were conveyed; and whether they were oral, in writing, or both." *Heller*, 631 F.Supp. at 1424. Additionally, the complaint must allege: "(1) the nature, amount and date of the securities in question; and (2) facts sufficient to permit the calculation of the turnover rate of the account and/or the percentage of the account value paid in commissions." *Siegel v. Tucker, Anthony, & R.L. Day, Inc.*, 658 F.Supp. 550, 554 (S.D.N.Y.1987) (citations omitted). Such facts are necessary to " 'allow the determination of whether or not trading was excessive.' " *Id.* (quoting *Moran v. Kidder Peabody & Co.*, 609 F.Supp. 661, 666 (S.D.N.Y.1985), *aff'd*, 788 F.2d 3 (2d Cir.1986)). The amended complaint provides few of these particulars.

The complaint remains defective in several respects. Averments to the effect that the investments were "unsuitable," Amended Complaint para. 11, and that the

defendant "traded excessively" in the plaintiffs' account, *id.* at para. 13, are insufficient. *See D'Addio v. L.F. Rothschild Inc.*, 697 F.Supp. 698, 701 (S.D.N.Y.1988). Conclusory statements as to the excessiveness of trading are not enough to meet the requirements of Rule 9(b). *Moran*, 609 F.Supp. at 666. The plaintiffs do allege, however, that Vandever bought the two securities on July 14, 1987 and later sold them on November 20, 1987. Amended Complaint para. 13. Nonetheless, these transactions can hardly be described as churning. *See Jaksich v. Thomson McKinnon Sec., Inc.*, 582 F.Supp. 485, 496 (S.D.N.Y.1984) (purchase of two securities over an eight month period insufficient to establish a churning claim). Furthermore, the sale of the securities in question was preceded by the market crash, which occurred less than a month earlier. In retrospect, sale of the securities at an even earlier date might have been more prudent.

The complaint also fails to provide enough information to permit calculation of the turnover ratio of the account. Likewise, it is devoid of information sufficient to permit calculation of the defendant's commissions as a percentage of account equity. *Moran*, 609 F.Supp. at 666. Plaintiffs have also failed to allege with sufficient clarity whether or not the account was a discretionary one. *Heller*, 631 F.Supp. at 1425.[2] The accumulation of these flaws is fatal to the plaintiffs' complaint. Without more detailed information concerning the excessive trading alleged and the commissions paid to the defendant, plaintiffs' churning claim must fail.

The lack of particularity permeates the plaintiffs' federal securities fraud claims. Accordingly, the court grants the defendant's motion to dismiss these counts with prejudice.[3]

---

**2.** On this point, plaintiffs' complaint is unclear. Plaintiffs allege that they lack the experience and financial acumen to make informed judgements about investments, Amended Complaint para. 4, and that Vandever "exercised complete control over the Plaintiffs' account." *Id.* para. 12. Conversely, they also allege that Vandever made investments without the plaintiffs' approval, without a power of attorney or discretion

granted by the plaintiffs, *id.* para. 7, and without authorization. *Id.* para. 10.

**3.** Plaintiffs clearly have no right to a second amendment. Rule 15(a), Fed.R.Civ.P., and this is not a case where "justice so requires." *Id.* In dismissing the plaintiffs' initial complaint, this court put plaintiffs on sufficient notice of what was required to state a cause of action. It is, therefore, within this court's discretion to dis-

### B. *Pendent Jurisdiction*

■ This court's jurisdiction over the plaintiffs' state-law claims was premised solely on the doctrine of pendent jurisdiction. *See generally United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Under this doctrine, a federal court has jurisdiction over an entire action, including state-law claims, "whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988)(quoting *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138). Nonetheless, the doctrine remains one of sound judicial discretion. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139; *see also Carnegie–Mellon,* 484 U.S. at 350, 108 S.Ct. at 618; *Miller v. Lovett,* 879 F.2d 1066, 1071 (2d Cir.1989).

■ Under *Gibbs*
a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Carnegie–Mellon,* 484 U.S. at 350, 108 S.Ct. at 618–19 (footnote omitted) (citing *Gibbs,* 383 U.S. at 726–27, 86 S.Ct. at 1139). Indeed, the Court has stated in no un-certain terms that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139.[4] Since the only subject matter jurisdictional bases for this law suit, the federal securities fraud claims, have been dismissed before trial, it is well within the discretion of this court to dismiss the pendent state-law claims. *Albany Ins. Co. v. Esses,* 831 F.2d 41, 45 (2d Cir.1987); *see also Dandorph v. Fahnestock & Co.,* 462 F.Supp. 961, 966 (D.Conn. 1979) (Burns, J.) (since the federal securities fraud claims have been dismissed, court should not assume pendent jurisdiction over state-law claims).

Nothing is now gained, in terms of judicial economy or convenience, by entertaining plaintiffs' state-law claims in this court. Further, dismissal of the pendent state-law claims would avoid "[n]eedless decisions of state law." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139; *Miller,* 879 F.2d at 1072. Finally, dismissal would not work injustice to the plaintiffs, who would still be able to seek redress in a Connecticut court. Connecticut law provides that when a party's claims have been dismissed in federal court for want of jurisdiction, that party has one year to refile that claim in state court. Conn.Gen.Stat. Section 52–592 (1989); *see also Broderick v. Jackman,* 167 Conn. 96, 98–99, 355 A.2d 234, 235 (1974). The plaintiffs' state-law claims, therefore, are dismissed without prejudice.

### *Conclusion*

For the foregoing reasons, the court grants the defendant's motion to dismiss the federal securities fraud claims with prejudice. The court also grants, without prejudice, the defendant's motion to dis-miss the complaint with prejudice. *See Denny v. Barber,* 576 F.2d 465, 471 (2d Cir.1978).

**4.** The Court has recently commented that this statement does not establish a mandatory rule. *Carnegie–Mellon,* 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7; *see also Rosado v. Wyman,* 397 U.S. 397, 403–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970). Rather, it merely recognizes that: in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims.
*Carnegie–Mellon,* 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7.

miss the remaining state-law claims for want of jurisdiction.

SO ORDERED.