United States Court of Appeals,

Eleventh Circuit.

No. 95-5224.

Nancy FREUNDT-ALBERTI, Oscar Freundt Roselli, Lucciola Alberti De Freundt, Plaintiffs-Appellants,

v.

MERRILL, LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, Defendant-Appellee.

Jan. 29, 1998.

Appeal from the United States District Court for the Southern District of Florida. (No. 91-1882-CIV-KEHOE), James W. Kehoe, Judge.

Before EDMONDSON, Circuit Judge, and CLARK and WELLFORD[*], Senior Circuit Judges.

PER CURIAM:

In this case plaintiffs' counsel had difficulty pleading their clients' case adequately. After several dismissals without prejudice, the district court understandably lost patience and dismissed it with prejudice. Nevertheless, our review of the second Amended Complaint and exhibits convinces us that plaintiffs' complaint is sufficient. After pleading counts against defendant for fraud and failure to follow plaintiffs' instructions with respect to purchases of securities, plaintiffs clearly plead a count for churning which is supported by exhibits attached to plaintiffs' second Amended Complaint. These exhibits are copies of defendant's monthly statements of plaintiffs' transactions during a number of months. We attach one page of the account.

The transactions reflect the very first large purchase of GNMA bonds in April and May of 1987, on which a two percent underwriting commission was charged. These bonds were sold,

_____

[*]Honorable Harry W. Wellford, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

despite high yields of interest, in July, 1987, at a loss of over $45,000, with an underwriting fee of one percent. Another early purchase in the account, a Merrill Lynch collateral mortgage investment, was acquired in late July of 1987 with a *three percent* "markup" or underwriting fee and part was sold in August of 1987 at a loss; the balance was sold in September, 1987 at a loss of over $74,000.

Consistent and large losses with similar underwriting fees on markup allegedly occurred throughout 1987 and 1988. Losses on transactions were likewise allegedly depressingly consistent in 1989. In 1990 there were numerous very shortterm "exchanges in" and "exchanges out" of mutual funds, some of them Merrill Lynch funds with substantial losses. (In August 1990, alone, losses on such "exchanges" were nearly $100,000.) The amended complaint specified a significant turnover rate and that defendant earned more than a half million dollars on this account during an approximately three-year period.

The amended complaint asserted "false and misleading oral reports to the plaintiffs," concealment, and failure "to give plaintiffs any written reports or statements" (with one exception) for two years. It specifically also averred defendant's misrepresentation about trading authority, and fraud and deceit.

These averments in the amended complaint address fully the district court's concerns in its prior dismissals about necessary elements of the churning (and fraud) counts. They assert particularly: (1) commissions paid; (2) turnover ratio; and (3) specific securities involved. This case is decidedly different from the circumstances in *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485 (6th Cir.1990):

> Plaintiffs have not alleged, nor does anything in the complaint support the inference that defendants engaged in an inordinately large number of transactions during the time in question, or that defendants engaged in "in and out" or other, similarly questionable, trading, or that defendants engaged in any other conduct that would indicate that their trading was excessive. Plaintiffs argue that figures such as turnover ratios constitute evidence, which they need not provide to withstand a 12(b)(6) motion.

* * *

For example, when a plaintiff alleges that a broker turned his account over more than ten times in a year, he implicitly alleges that his broker exceeded the benchmark annual turnover ratio of six. *See Siegel,* 658 F.Supp. at 554.

* * *

Similarly, a plaintiff who alleges that his broker engaged in "in and out" trading implicitly alleges that his broker has breached industry standards and practices, and thereby alleges a basis for the inference of excessive trading. *See Costello,* 711 F.2d at 1369 and n. 9.

*Id.* at 491. *See also Heller v. L.F. Rothschild,* 631 F.Supp. 1422 (S.D.N.Y.1986).

The district court should reconsider the adequacy of the so-called "in connection with" averments. Plaintiff Nancy Freundt-Alberti and her mother, Lucciola Alberti de Freundt, are two of the joint holders in this account—the other, the father and husband, is long-since deceased. The district court should consider, on remand, whether the two named parties may proceed under these circumstances as agents of the deceased. There is no showing or averment in the motion to dismiss by Merrill Lynch of conflict of interest nor danger of duplicative or multiple proceedings. The joint account agreement states, furthermore, that upon notice of death of any joint account holder, Merrill Lynch "shall separate the account into equal accounts." Why may not the two named live plaintiffs sue in connection with their own separate interests or accounts?

We also note that the district court never discussed, in effectuating dismissal of this case, the basis of the joinder deficiency or requirement. Under Fed.R.Civ.P. 19(b), "the court shall determine whether in equity and good conscience the action should proceed among the parties before it" or if the deceased joint account holder "cannot be made a party." It did not consider whether the other parties may serve as agents of or were the sole heirs of the deceased joint account holder. The district court must also consider " whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." In determining whether the action should proceed, a court should

consider such pragmatic factors as whether the absentee party would be "adversely affected *in a practical sense* ";  whether prejudice, if any, to defendant would be "minor";  whether there is a serious threat of further action;  and whether the court can "shape relief" in the absence of the third (deceased) joint account holder.   *See* the amended rule advisory committee notes.  Finally, the district court, on remand, must consider and specify the basis for dismissal of the Florida state law claims.

    For the reasons stated above, the district court's dismissal is VACATED, and the matter is REMANDED for further consideration in light of this opinion.

ca(98)478-1,SIZE-40 PICAS,TYPE-PDI