**William HAGSTROM, Victor Berger, Edwin Falloon and Eduardo Nijensohn, Plaintiffs,**

v.

**Martin E. BREUTMAN, Meb Investments, Ltd., and Beverly Associates, Defendants.**

No. 83 C 0476.

United States District Court, N.D. Illinois, E.D.

Feb. 23, 1984.

Gregory A. Adamski, Michael J. Weik, Carponelli, Krug, Adamski & Goodstein, Chicago, Ill., for plaintiffs.

Dennis A. Bell, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

In something less than a subtle attempt to avoid our previous order remanding this action to arbitration, plaintiffs now move for leave to file an amended complaint and to vacate the October 3, 1983 order staying these proceedings pending arbitration. For the reasons hereinafter stated, we deny plaintiffs' motion to file their amended count X, alleging excessive trading and churning, we grant plaintiffs' motion to file count XII, alleging a Rule 10b–5 claim, and we decline to vacate our stay. All the plaintiffs' claims, except for count XII, should proceed forthwith to arbitration. We stay resolution of count XII, pending arbitration.

We previously discussed the facts of this case in our October 3, 1983 Memorandum Opinion. 572 F.Supp. 692 (N.D.Ill.1983). We will, therefore, merely reiterate some of the essential facts. On January 24, 1983, plaintiffs filed a complaint pursuant to section 4b of the Commodity Exchange Act, 7 U.S.C. § 6b, alleging that defendants had committed fraud. This allegation was based on certain conduct allegedly engaged

in by Martin E. Breutman ("Breutman") and MEB Investment, Ltd. ("MEB").[1]

On July 15, 1978, in an Agreement of Limited Partnership of Beverly Associates, plaintiffs formed a limited partnership with Breutman and MEB as general partners for the purpose of investing in commodity futures. The general partners were to have exclusive management and control of the partnership. Article XVI of the Agreement contained an arbitration clause which we held to be applicable to this action under *C. Itoh & Co. (America), Inc. v. Jordan International Co.*, 552 F.2d 1228 (7th Cir.1977). *See also Tamari v. Bache & Co. (Lebanon) S.A.L.*, 565 F.2d 1194 (7th Cir. 1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978) (arbitration is proper in a suit based upon alleged fraud in violation of the CEA); *Romnes v. Bache & Co.*, 439 F.Supp. 833 (W.D.Wis.1977) (arbitration is available to resolve disputes concerning a partnership agreement the purpose of which was to trade commodity future contracts).

From 1978 through January 21, 1981, the general partners, Breutman and MEB, used the limited partners' assets to trade commodities on the Chicago Mercantile Exchange, the Chicago Board of Trade, and the Commodity Exchange through Rufenacht, Bromagen & Hertz, Inc., with Breutman and MEB acting as the sole account executives.

### Count X

On October 3, 1983, we found that plaintiffs failed to plead churning with the requisite specificity and granted defendants' motion to dismiss count X, without prejudice. The proposed amended count X is similarly defective. In pleading a churning claim, a plaintiff must identify the securities involved, the nature, amount, and dates of the transactions in issue, as well as sufficient facts to allow for a determination of the turnover rate in the account and/or the percentage of the amount paid in commissions. *Shelley v. Noffsinger*, 511 F.Supp. 687, 692 (N.D.Ill.1981). Further, churning with respect to commodities trading, in which there is usually more activity due to the essential volatility of the subject matter of the trading, requires factual allegations in addition to just the trades involved, sufficient to constitute a basis for concluding that the volume of trades was not for sound trading purposes, but for the purpose of generating excessive commissions.

Plaintiffs have again failed to plead churning with the requisite specificity. To improve the previously dismissed count X they add only one paragraph, paragraph 54, which states that "Exhibit F is an account statement showing the transactions involved, the nature, amount, and dates of the transactions, and the commissions paid." This allegation doubly fails; first, there is no Exhibit F attached either to the proffered second amended complaint or to the January 24, 1983 complaint, and second, there are still not sufficient factual allegations to support a conclusion that the volume of trades was generated to seek commissions, rather than for sound trading purposes. Where a complaint alleges no new facts requiring a court to reconsider its earlier decision, a motion to file an amended complaint is properly denied. *Stebbins v. Weaver*, 537 F.2d 939, 942 (7th Cir.1976).

### Count XII

In count XII, plaintiffs allege that Breutman and MEB cheated and defrauded them in violation of sections 10(b) and 27 of the Securities Exchange Act of 1934 and Rule 10b–5. Defendants contend that this pleading fails to state a Rule 10b–5 claim because allegations of fact in the complaint relate to commodities transactions and commodities are not securities.

However, a limited partnership interest, such as in the one formed here, can

---

1. MEB is wholly owned by Breutman and was formed for the purpose of participating in the commodity futures market.

constitute a security in certain circumstances. *See Goodman v. Epstein*, 582 F.2d 388, 406 (7th Cir.1978), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). The Supreme Court has enunciated the basis test for defining a security.

■ The *Howey/Forman* test for determining the existence of a security has three elements: (1) an investment in a common venture; (2) premised upon a reasonable expectation of profits; (3) to be derived solely from the entrepreneurial or managerial efforts of others. *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *SEC v. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). A limited partner's interest in a limited partnership established under Illinois law meets, on its face, all of these requirements. *See Goodman, supra*, 582 F.2d at 406.

■ The Agreement between the parties here evidences a common venture, the association of general and limited partners to invest in commodity futures; it is reasonable to assume that the Agreement was premised on a reasonable expectation of profits; and, lastly, MEB and Breutman, as general partners, were to have exclusive management and control of the partnership business. Thus, count XII, though far from being a model of pleading a securities law violation, when fairly read in connection with paragraphs 1 through 20 which it incorporates and with the Agreement, alleges sufficiently, if barely a possible violation of federal securities law.

In allowing plaintiffs to file count XII, we do not intend to suggest that plaintiffs will eventually prevail on this self-styled "securities" count. Nor can we fail to observe that the addition of this count appears to be a futile attempt to keep the dispute between the parties out of arbitration.

### Arbitration

■ Plaintiffs also ask us to vacate our stay of the proceedings pending arbitration. We decline to do so. It is clear that arbitration is proper in a suit based upon alleged fraud in violation of the CEA. *See, e.g., Tamari v. Bache & Co. (Lebanon) S.A.L.*, 565 F.2d 1194 (7th Cir.1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978).

■ While federal policy generally favors arbitration as a method of dispute resolution, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), there are judicially created exceptions to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, in cases involving federal protective legislation. One of these exceptions applies to federal securities law. *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (invalidating broker-customer agreements to arbitrate controversies involving claims under the Securities Act of 1933).

■ In our previous opinion, we declined to extend *Wilko* to claims arising under the CEA, based upon the fact the CEA itself does not bar the use of arbitration and in the face of the broad arbitration agreement which was apparently entered into freely by all the parties to this suit. The addition of count XII does not change our disposition of this case. The entire controversy between the parties, except for count XII, is arbitrable and should be submitted to arbitration pursuant to the arbitration clause of the Agreement. A district court may not refuse to enforce an agreement to arbitrate because of the addition of a non-arbitrable claim, even where a bifurcated resolution may result in an assertedly inefficient or delayed resolution of the entire dispute. *Dickenson v. Heinhold Securities, Inc.*, 661 F.2d 638, 646 (7th Cir. 1981). Here, the arbitration will, in all probability, dispose of the 1934 Act count.

### Conclusion

We deny plaintiffs' motion to vacate the October 3, 1983 Stay Order. We deny plaintiffs' motion to file an amended count X. Plaintiffs may file count XII as part of a second amended complaint. We stay the resolution of count XII pending arbitration. An order consistent herewith will enter.