**Joseph MORAN, Plaintiff,**

v.

**KIDDER PEABODY & CO., a corporation, and Bruce Barbers, an individual, Defendants.**

**No. 84 Civ. 9110 (RWS).**

United States District Court,
S.D. New York.

May 7, 1985.

Felix T. Gilroy, Staten Island, N.Y., for plaintiff.

Shanley & Fisher, P.C., New York City, for defendants; Matthew Farley, New York City, of counsel.

OPINION

SWEET, District Judge.

Plaintiff Joseph Moran ("Moran") commenced this action against defendants Kidder, Peabody & Co. ("Kidder Peabody") and Bruce Barbers ("Barbers") alleging violations of the federal securities laws and common law fraud. Kidder Peabody now moves this court to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) or in the alternative for partial summary judgment on the grounds that certain claims are barred by the applicable statute of limitations, and for an order compelling arbitration of any remaining claims. For the reasons discussed below, the motions to dismiss the federal claims and to compel arbitration are granted.

**Facts**

Moran is an individual investor who was a customer of Kidder Peabody, a large investment concern located in New York, between June and December of 1983. Barbers was an employee of Kidder Peabody who acted as Moran's representative and account manager at Kidder Peabody. Between June and December 10, 1983, Kidder Peabody acted as broker for the execution of purchase and sale orders of stocks and stock options on behalf of Moran's account. Upon transferring his account to Kidder Peabody, Moran signed a form agreeing to arbitrate any claims against the firm.

In his complaint, Moran alleges that Barbers engaged in a course of fraudulent and deceitful activities with regard to Moran's account that resulted in the liquidation of the account and the loss of $90,000.00. In his first cause of action for fraud, Moran claims that "on various and diverse occasions," between June 24, 1983 and September 29, 1983 Barbers falsely reported that certain items were purchased or that certain purchases were a mistake, reprinted inaccurate price quotes, purchased items without Moran's authorization and made false representations to Moran in an effort to induce him to purchase certain stocks and stock options. In his second cause of

action, Moran alleges that Barbers' activities violated Sections 10(b), 7 and 18 of the Securities Exchange Act of 1934, and Sections 12 and 17(a) of the Securities Act of 1933. He claims that Kidder Peabody credited his account with $55,000.00 without his knowledge and subsequently traded the account as if that sum were deposited therein, that Kidder Peabody unlawfully extended him credit and that Barbers made false representations to induce Moran to make additional cash payments. As further evidence of a general scheme of securities fraud, he states that a copy of a Kidder Peabody form, Form 412 (Members Authority to Transfer and Receive Account), signed by Moran, was materially altered as to the type and amount of the account. In count three of the complaint, Moran contends that Kidder Peabody exercised control over his account and that his account was traded excessively for the sole purpose of generating commission. In his final count, Moran charges Barbers and Kidder Peabody with breach of professional responsibility and negligence. On the basis of these claims, Moran claims damages in the amount of $90,000.00 and punitive damages in the amount of $500,000.00.

Jurisdiction in this action is asserted pursuant to both the federal securities laws and 28 U.S.C. § 1332.

**Discussion**

In its motion, Kidder Peabody moves for dismissal of the federal claims for failure to state a cause of action. In the alternative, it moves for partial summary judgment dismissing the securities claim brought under § 12 of the Securities Act as time barred. It also moves for an order compelling arbitration of its claims pursuant to the written agreements between the parties.

**Federal Securities Claims**

In determining the sufficiency of a complaint pursuant to a motion under Fed.R. Civ.P. 12(b)(6), a court must accept the plaintiff's allegations in the complaint as true and resolve every doubt in favor of the plaintiff. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jen-*

*kins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, supra,* 355 U.S. at 45–46, 78 S.Ct. at 101–102.

In his complaint, Moran repeatedly asserts that Barbers and Kidder Peabody defrauded him in violation of the federal securities laws. He supports this claim with general allegations that the defendants engaged in fraudulent and deceitful activity such as reporting price quotes inaccurately and making unauthorized purchases.

■ Whether or not these allegations are sufficient to state a cause of action under the federal securities laws, they fail to meet the requirements of Fed.R.Civ.P. 9(b) as to pleading fraud with particularity. Fed.R.Civ.P. 9(b) requires that:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Under Rule 9(b), "mere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of Rule 10b–5 are insufficient." *Shemtob v. Shearson, Hamill & Co., Inc.,* 448 F.2d 442, 444 (2d Cir.1971). The requirement that fraud be pleaded with specificity serves several purposes. First, it inhibits the filing of a complaint as a pretext for the discovery of unknown wrongs. *Gross v. Diversified Mortg. Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *aff'd,* 636 F.2d 1201 (2d Cir.1980). Second, it serves to place defendants on notice of the exact misconduct with which they are charged and enables them to prepare a defense. *Rich v. Touche Ross & Co.,* 68 F.R.D. 243, 245 (S.D.N.Y.1975). Finally, the requirement protects defendants from the harm that comes to their reputations when they are charged with the commission of acts involving moral turpitude. *Gross v. Diversified Mortg. Investors, supra,* 431 F.Supp. at 1087; *Segal v. Gorden,* 467 F.2d 602, 607 (2d Cir.1972).

Moran's allegations do no more than state generally that a fraud or misrepresentation was committed. Such all encompassing claims as "almost all of the representations made by Defendant Bruce Barbers ... were untrue statements of material facts upon which plaintiff relied" (Complaint, ¶ 10), do not provide the specificity required by the rule. While the papers submitted by Moran in connection with this motion provide some greater degree of specificity with respect to some of the claims, such statements cannot fulfill the pleading requirements. It is well established in this Circuit that when pleading misrepresentations:

> [P]laintiff must specify: (1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the context of such statements and the manner in which they misled the plaintiffs, and (4) what the defendants obtained as a consequence of the fraud.

*Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978) (citations omitted). *See also Goldman v. Belden*, 754 F.2d 1059 (2d Cir.1985). Moran's allegations fail to meet this standard. The general statements that Barbers misrepresented price quotations or purchased items without authorization do not provide the defendants with adequate notice of the alleged fraud.

Similarly, Moran's allegations as to the existence of a scheme to defraud Moran are also too vague. The only specific evidence of fraud to which Moran directly refers relates to alleged alterations of the so-called Form 412, and the subsequent treatment of his account as if it contained an additional sum of $55,000.00. While these allegation are significantly more concrete and specific than the other generalized claims of fraud, it still fails to meet the requirements of Rule 9. The complaint fails to show how this alteration or the crediting of additional sums acted as a fraud. From the motion papers it appears that the alterations consist of notations changing a credit of $19,000 to be transferred to Kidder Peabody to a charge of $25,000. The complaint makes clear that Moran did not discover the alterations until after trading was completed; there is no suggestion that he made any investment decision or acted in any manner in reliance on the form. Merely stating that based on the notations on the form and conversations with Barbers "it then became apparent that a scheme of fraud or deceit was at work" (Complaint, ¶ 21), is not sufficient to indicate what the nature of that fraud was or how it affected him. As to the allegation that the defendants caused him to be credited with $55,000.00 that did not exist in violation of the margin requirements, Moran does not reveal the manner in which this action affected him. To meet the requirements of Rule 9(b) a plaintiff must show the manner in which he was damaged by the implementation of a deceptive or manipulative practice or by a misrepresentation or omission. *Quintel Corp., N.V. v. Citibank, N.A.*, 589 F.Supp. 1235, 1243 (S.D.N.Y.1984); *Savino v. E.F. Hutton & Co., Inc.*, 507 F.Supp. 1225, 1232 (S.D.N.Y. 1981). While it might be possible to speculate from the limited information available in the complaint that Moran was injured by having to cover greater than anticipated losses due to the greater sum being traded, Moran has failed to lay out this alleged injury with sufficient particularity to allow the defendants to defend against it.[1]

---

**1.** Moran also asserts a claim for relief under § 17 of the 1933 Act, 15 U.S.C. § 77q(a)(1–3), a claim which the defendants contend must fail on the grounds that no private cause of action should be implied under § 17. Whether or not such a cause of action exists, however, a question which was left open by the Second Circuit in *Zerman v. Ball*, 735 F.2d 15 (2d Cir.1984), need not be resolved at this stage since the essential element of a § 17(a) claim, like its counterpart section 10(b), is fraud. As noted above, Moran has failed to meet the requirements of Rule 9(b) with respect to his fraud claims.

An additional claim under the anti-fraud provisions of the securities laws advanced by Moran is his allegation as to "churning." Churning occurs when a securities dealer creates commissions "by inducing transactions in the customer's account which are disproportionate to the size and character of the account." *Newburger, Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1069 (2d Cir.1977). To establish a claim for churning a plaintiff must plead and prove (1) that the trading in the account was excessive in light of his investment objectives, (2) that the broker exercised control over the account, and (3) that the broker acted with intent to defraud or with willful and reckless disregard for the interests of his client. *See Rush v. Oppenheimer & Co., Inc.,* 592 F.Supp. 1108, 1112 (S.D.N.Y.1984); *Mihara v. Dean Witter & Co., Inc.,* 619 F.2d 814, 821 (9th Cir.1980). A plaintiff must set forth facts that allow the determination of whether or not trading was excessive. Excessive trading is generally held to exist when there is an annual turnover rate in an account in excess of six. *See Rush v. Oppenheimer & Co., Inc., supra,* 592 F.Supp. at 1112.

In count three, Moran alleges that the "[d]efendants exercised control over plaintiff's account," that the defendants "made an excessive number of trades in Plaintiff's account" between June 24, 1983 and September 29, 1983, and that "[d]efendant's commissions and profits were excessive." (Complaint, ¶'s 31–33). He also states that "[p]laintiff believes he was charged approximately nineteen thousand ($19,000.00) dollars in various fees on a total loss in his account of approximately Ninety Thousand ($90,000.00) dollars." (Complaint, ¶ 32). Although Moran appends his monthly account statements to the complaint, it does not appear that these statements or his estimate satisfy the requirement that a plaintiff set forth facts that would permit the calculation of the turnover ratio of the account and/or the percentage of the account value paid in brokerage commissions. *Hagstrom v. Breutman,* 580 F.Supp. 773, 775 (N.D.Ill. 1984). The complaint does not make clear exactly how much Moran actually invested. A plaintiff must provide enough information to permit calculation of the defendants' commissions as a percentage of account equity in either a monthly or year-to-date basis. *Polera v. Altorfer, Podesta, Woolard & Co.,* 503 F.Supp. 116, 119 (N.D. Ill.1980); *Carroll v. Bear Stern,* 416 F.Supp. 998, 1000–01 (S.D.N.Y.1976).

In any event, Moran's allegations fail to meet the pleading requirement as to the trading being excessive in light of the plaintiff's investment objectives. Moran has failed to address the issue of investment objectives, and his conclusory statements as to the excessiveness of the trading and commissions are not enough to overcome this requirement. *Hagstrom v. Breutman, supra.* Furthermore, Moran has not successfully alleged that Barbers had discretionary control over his account. Where a customer has the independent capacity to accept or reject his brokers' recommendations, he cannot accuse his broker of having control of his account even if he habitually follows his broker's recommendations. *Follansbee v. Davis, Skaggs & Co.,* 681 F.2d 673 (9th Cir.1982). In this case, Moran states that on at least one occasion he refused to follow Barbers' advice or recommendation. (Complaint ¶ 8). Given his failure to clearly set forth the degree of excess trading or the nature of his investment objectives, and his contradictory assertions as to control, Moran's complaint fails to adequately state a claim for churning under the securities laws.

Moran also alleges a violation of § 12 of the Securities Act, 15 U.S.C. § 77l (2). Section 12(2) imposes liability on any person offering or selling a security by means of a prospectus or oral communication containing a material misstatement of fact. To the extent that the claim under § 12 sounds in fraud, a conclusion which may be assumed if the alleged misstatements are those generally referred to earlier in the complaint, that is, Barbers' allegedly fraudulent representations as to price and other matters, Rule 9(b) is applicable.

Because the relevant section of the complaint does nothing more than restate the statute, it also fails to meet the requirements of stating fraud with particularity. (Complaint ¶ 17). As noted above, Moran has not identified what oral communication or statement in a prospectus was misleading, nor has he pled any of the factual circumstances of the fraud with specificity. *See Todd v. Oppenheimer & Co., Inc., supra,* 78 F.R.D. at 422–23. Even if it is assumed that the mistatement referred to concerns the alleged alteration in Form 412, Moran has failed to meet the requirements necessary to state a claim under § 12. Moran has not laid out any connection between Form 412 and the sale of securities. He has failed to allege, and on the facts set forth in the complaint could not allege, that Form 412 was used as a means to offer or sell a security. From the complaint it appears that Form 412 is merely a form authorizing Kidder Peabody to receive an account from another firm. Moran also contends that he did not discover the alteration until December of 1983. Given these facts, Moran has failed to adequately allege that the defendants' offered to sell or sold any securities by means of any statement in the form. Since he has failed to state a claim under § 12, there is no need to address Kidder Peabody's alternative motion to dismiss the claim as barred by the statute of limitations.

■ Moran also advances a claim under § 18 of the Securities Exchange Act of 1934, which provides for liability for persons making a material misstatement in any document filed with the SEC. Because Moran has failed to identify any application, report or document filed with the SEC containing untrue statements, the claim is dismissed.

■ As to Moran's claim under § 7 of the 1934 Act as to Kidder Peabody's allegedly inappropriate extension of margin credit under the pertinent federal and industry regulations, a review of the applicable law suggests that no private right of action should be implied under this section.

As originally enacted, § 7 prohibited brokers from extending credit in violation of Federal Reserve rules. Responsibility for compliance was placed on brokers, rather than on customers. In *Pearlstein v. Scudder & German,* 429 F.2d 1136, (2d Cir. 1970), *cert. denied,* 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971) (*"Pearlstein I"*), the Second Circuit held, over the strenuous dissent of Judge Friendly, that an investor could bring a private cause of action under § 7. Since that time, however, § 7 was amended by Congress passing § 7(f), which made the investor equally responsible with his broker for the observance of the margin requirements of § 7. In a subsequent decision in the *Pearlstein* case (dealing solely with damages) the Second Circuit admitted that "the addition of § 7(f) to the Exchange Act ... cast(s) doubt upon the continued viability of the rationale of our prior holding." *Pearlstein v. Scudder & German,* 527 F.2d 1141, 1145 n. 3 (2d Cir.1975) (*"Pearlstein II"*). Subsequent district court decisions have declined to apply *Pearlstein I* to permit an implied private right of action for alleged margin violations. *See Zerman v. Jacobs,* 510 F.Supp. 132, 135 n. 10 (S.D.N.Y.1981), *aff'd,* 672 F.2d 901 (2d Cir.1982); *Schy v. Federal Deposit Ins. Co.,* 465 F.Supp. 766, 773–75 (E.D.N.Y.1977); *Establissement Tomis v. Shearson Hayden Stone,* 459 F.Supp. 1355, 1358–60 (S.D.N.Y.1978). Given the Supreme Court's reasoning in *Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), in which they noted that a person whose own conduct was meant to be regulated "can scarcely lay claims to the status of 'beneficiary' whom Congress considered in need of protection," *id.* at 37, 97 S.Ct. at 947, it would not be consistent with the policy set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) of only implying private rights of action where Congress intended to provide protection for a group of individuals to allow a private investor to seek the protection of § 7. Moran's claim under § 7 is therefore dismissed.

Because Moran has failed to properly plead any of his federal claims, the claims are dismissed, with the understanding that Moran may amend the complaint as to all the claims except that those brought under § 7.

## State Law Claims

In its motion, Kidder Peabody seeks arbitration of the claims brought under state law.[2] Upon opening his account at Kidder Peabody, Moran executed a Customer Agreement containing the following arbitration clause:

> Any controversy arising out of or relating to accounts of or transactions with or for the undersigned or to this agreement or the breach thereof shall be settled by arbitration in accordance with the rules of either the American Arbitration Association or the New York Stock Exchange as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office in New York within five days after demand by you that such election be made, then you may make such election. Judgment upon any award may be made in any court having jurisdiction thereof.

(Ex. A to Farley affidavit).

■ All of Moran's state law claims appear to fall within the language of this provision. Given the Supreme Court's opinion in *Dean Witter Reynolds, Inc. v. Byrd,* — U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) in which they held that the Arbitration Act requires district courts to compel arbitration of arbitable state law claims, even where such claims are intertwined factually and legally with non-arbitable federal securities claims, there is no reason not to compel arbitration of these claims. Even if Moran takes advantage of his opportunity to replead his federal claims and successfully states a claim under the federal securities laws, the holding in *Byrd* would require that the arbitration

agreement be enforced with respect to the state law claims.

For the reasons discussed above, the defendants' motions to dismiss the federal securities claims and to compel arbitration of the state law claims are granted. Leave is hereby granted to file an amended complaint within thirty (30) days of this opinion. In the absence of such a filing judgment will be entered dismissing the action.

IT IS SO ORDERED.

---

**2.** Although Kidder Peabody also seeks arbitration of the federal securities laws claims under *Byrd v. Dean Witter Reynolds, Inc.,* — U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the dismissal above of all of the federal claims makes such a determination unnecessary.