**DREXEL BURNHAM LAMBERT
GROUP, INC., Plaintiff,**

**v.**

**MICROGENESYS, INC., Defendant.**

**No. 91 Civ. 2060 (SWK).**

United States District Court,
S.D. New York.

Oct. 15, 1991.

Tenzer, Greenblatt, Fallon & Kaplan by Mark H. Moore, New York City, for plaintiff Drexel Burnham Lambert Group, Inc.

Cummings & Lockwood by William H. Narwold, William H. Bright, Hartford, Conn., for defendant MicroGeneSys, Inc.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this action involving a claim on a subordinated convertible bridge note, defendants have moved, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, for an order dismissing plaintiff's first, second and third claims based on § 10(b) of the Securities Exchange Act of 1934 and § 12(2) of the Securities Act of 1933. In addition, defendants have moved to dismiss plaintiff's fourth, fifth and sixth claims on the ground that there is no independent basis for federal jurisdiction over these common law claims.

## BACKGROUND [1]

In 1989, the plaintiff, Drexel Burnham Lambert Group, Inc. ("Drexel"), an underwriter, loaned $1,000,000 to the defendant, MicroGeneSys, Inc. ("MicroGeneSys"), a biotechnology company. This money was provided after Drexel failed to accomplish an initial public offering (the "IPO") of MicroGeneSys' shares. To evidence the obligation, MicroGeneSys executed a Senior Subordinated Convertible Bridge Note (the "Note"), in the amount of $1,000,000, payable to Drexel. Drexel and MicroGeneSys simultaneously entered into a Senior Subordinated Convertible Bridge Note and Warrant Purchase Agreement, dated February 27, 1989 (the "Agreement"). The Agreement and Note were later amended to provide that principal and interest would become due and payable on January 1, 1990, unless all unpaid interest which had accrued through that date was paid.

As of January 2, 1990, MicroGeneSys had not paid any of the accrued interest due, and the Note became payable under the terms of the Agreement. By letter dated December 11, 1990, from Drexel Associate Counsel Carla Volpe Porter, Esq. ("Porter") to MicroGeneSys, Drexel demanded payment of the Note. After sending the demand letter to MicroGeneSys, Porter discussed the matter with the defendant's attorneys, Cummings & Lockwood. Speaking on behalf of MicroGeneSys, William Narwold, Esq. ("Narwold") of Cummings and Lockwood informed Porter that MicroGeneSys did not owe Drexel any money because defendant viewed the Note as payment for expenses it incurred during the unsuccessful IPO. Complaint, at ¶ 23.

In its Complaint, Drexel asserts federal securities claims and state law contract claims. Drexel contends that at the time MicroGeneSys executed and delivered the Note it had no intention of repaying it. Drexel further alleges that MicroGeneSys

---

**1.** For purposes of this motion, the facts alleged in the Complaint will be accepted as true. *See Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991) (citing *Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964)).

never informed Drexel of its intention not to repay the Note prior to executing and delivering the Note.

Subject matter jurisdiction is based on Section 22 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77v, Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, and principles of pendent jurisdiction.

MicroGeneSys now moves to dismiss Drexel's Complaint. MicroGeneSys contends that Drexel's first and second claims, based on § 10(b) of the Exchange Act, and its third claim, based on § 12(2) of the Securities Act, should be dismissed for failure to state a claim upon which relief may be granted, and failure to plead securities fraud with the requisite particularity. In addition, MicroGeneSys contends that Drexel's three common law claims should be dismissed as there is no independent basis for jurisdiction once the federal question claims are dismissed. Drexel opposes the motion.

## DISCUSSION

### I. Claims under § 10(b) and Rule 10b–5

MicroGeneSys has moved to dismiss Drexel's first and second claims (based on § 10(b)[2] of the Exchange Act [15 U.S.C. § 78j(b)] and Securities Exchange Commission Rule 10b–5[3] [C.F.R. § 240.10b–5]), for failure to state a claim. In considering a motion to dismiss pursuant to Rule 12(b)(6), a complaint must be read generously and every inference drawn in favor of the plaintiff. *Pross v. Katz*, 784 F.2d 455, 457 (2d

Cir.1986); *Metzner v. D.H. Blair & Co.*, 663 F.Supp. 716, 719 (S.D.N.Y.1987). A complaint should be dismissed only if it "appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Frasier v. General Elec. Co.*, 930 F.2d at 1007 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

To state a claim under § 10(b) and Rule 10b–5, the plaintiff must allege the following: (1) material misstatements or omissions (2) indicating an intent to deceive or defraud (scienter) (3) in connection with the sale or purchase of any security (4) upon which plaintiffs detrimentally relied. *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)).

The Complaint alleges that MicroGeneSys never intended to repay the Note delivered and executed on or about February 27, 1989. Since Drexel contends that the provisions of the Agreement, Note and Amendment were representations by MicroGeneSys that it intended to repay the Note, and MicroGeneSys never communicated to Drexel any intention not to repay the Note prior to the time the Note was made, Complaint, at ¶¶ 24–26, Drexel asserts that the representations were fraudulent, specifically, that:

> These representations were materially false and misleading, in that defendant intentionally concealed and failed to dis-

**2.** In relevant part, § 10(b) provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange—
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**3.** Rule 10b–5 states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

close the material fact of its intention not to repay the Note. Complaint, at ¶ 27. Drexel also contends that such intentional failure to inform it of MicroGeneSys' intent not to repay the Note constituted an omission of a material fact in connection with the purchase or sale of a security. Complaint, at ¶ 32.

■ It is well settled that "making a specific promise to perform a particular act in the future while secretly intending not to perform that act may violate Section 10(b) when the promise is part of the consideration for the transfer of securities." *Luce v. Edelstein,* 802 F.2d at 55 (citing *Pross v. Katz,* 784 F.2d 455, 457 (2d Cir.1986)). This proposition, however, is not contested in this action. What is in dispute is whether Drexel has properly alleged its § 10(b) claims, specifically, intent to defraud, with sufficient particularity.

■ Rule 9(b) of the Federal Rules of Civil Procedure requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Though Rule 9 provides that intent may be averred generally, the Second Circuit has held that a plaintiff may not rely on conclusory assertions that the defendant acted with a fraudulent intent. Instead, a plaintiff is "required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990) (citing *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988)).

■ In *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991), the Second Circuit espoused a test for determining whether a plaintiff has pleaded facts sufficient to give rise to a "strong inference" of fraudulent intent. The court stated that:

Essentially while Rule 9(b) permits fraudulent intent to be demonstrated by inference, this "must not be mistaken for

license to base claims of fraud on speculation and conclusory allegations." *Wexner,* 902 F.2d at 172. An ample factual basis must be supplied to support the charges.

Further, to satisfy the dictates of Rule 9(b) a plaintiff may not simply allege nonperformance of a promise. Courts are reluctant to infer fraud where the only allegation of fraud is that the defendant never intended to live up to its promise. *See e.g., Value Time Inc. v. Windsor Toys, Inc.,* 700 F.Supp. 6 (S.D.N.Y.1988). In addition, the Second Circuit has stated that "nonperformance of a promise alone does not support an inference that it was fraudulent when uttered." *Zola v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* CCH Fed.Secur.L.Rep. ¶ 93, 159 at 95, 721–722, 1987 WL 7742 (S.D.N.Y.1987). Thus, "the mere allegation that defendants did not intend to honor the contract at issue does not alone create a basis for alleging fraud." *Zucker v. Katz,* 708 F.Supp. 525, 529 (S.D.N.Y.1989) (citing *Murray v. Xerox Corp.,* 811 F.2d 118, 122 (2d Cir.1987)). In order to properly convert a contract claim into a tort claim for fraud, the allegedly defrauded party must allege specific facts from which a reasonable trier of fact could directly or indirectly infer that the promisor intended not to honor his obligations at the time the promise was made. *See Luce,* 802 F.2d at 55; *National Westminster Bank v. Ross,* 130 B.R. 656, 664 (S.D.N.Y.1991); *Songbird Jet Ltd. v. Amax Inc.,* 581 F.Supp. 912, 925 (S.D.N.Y.1984), *aff'd,* 812 F.2d 713 (2d Cir.1987).

■ The Second Circuit has recognized, however, that "great specificity is not required with respect to scienter." *Zucker v. Katz,* 708 F.Supp. at 529 (citing *Connecticut Nat. Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987)). A plaintiff must allege facts from which scienter can be inferred, but great specificity is not required as it would be unrealistic to expect a plaintiff to plead a defendant's actual state of mind. *Zucker v. Katz,* 708 F.Supp. at 529 (citing *Connecticut Nat. Bank v. Fluor Corp.,* 808 F.2d at 962). Further, when the facts are peculiarly within the opposing party's knowledge the

requirements of Rule 9(b) are relaxed, *See Nicholas v. Poughkeepsie Savings Bank/ FSB,* [1990–91 Transfer Binder] CCH Fed.Secur.L.Rep. ¶ 95,606 at 97,836, 97,839, 1990 WL 145154 (S.D.N.Y.1990) (citing *Segal v. Gordon,* 467 F.2d 602 (2d Cir.1972) and *Di Vittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987)), and allegations may be based on information and belief so long as specific facts are alleged to support a "strong inference" of fraud. *Wexner,* 902 F.2d at 172.

In this case, Drexel has pleaded facts sufficient to give rise to a "strong inference" of fraudulent intent on the part of MicroGeneSys, and thus the requirements of Rule 9(b) have been satisfied. Drexel has not based its claims of fraud on conclusory allegations, and has not merely alleged nonperformance of a contract. The Complaint alleges that MicroGeneSys refused to make any payments due under the Note, *see* Complaint, at ¶ 19, and that:

¶ 22. After Porter sent plaintiff's demand letter to defendant, she discussed plaintiff's claim with the defendant's attorneys, Cummings & Lockwood, a law firm located in Stamford, Connecticut.

¶ 23. William Narwold, Esq. ("Narwold") of Cummings & Lockwood, on behalf of defendant, informed Porter that defendant did not owe plaintiff any money, because defendant viewed the Note as payment to defendant for expenses it incurred during the failed IPO.

¶ 24. Thus, at the time that defendant executed and delivered the Note, it had the then present intention not to repay it.

Although this statement by Narwold was made two years after the execution of the Note, and Narwold did not explicitly state that MicroGeneSys did not intend to repay the Note at the time the Note was signed, the statement creates a "strong inference" of fraudulent intent at the time the Note was executed. *Wexner,* 902 F.2d at 172. MicroGeneSys' contention that "at best, this statement, if made, only suggests that MicroGeneSys now, some two years later, views the Note as a set-off for a claim it has against plaintiff," Defendant's Reply Memorandum to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, at 7–8, is not persuasive.

In 1988, Drexel attempted to assemble a syndicate of underwriters and generate investor interest in order to accomplish an IPO of MicroGeneSys' shares. Complaint, at ¶ 6. Drexel, however, failed to complete the IPO for MicroGeneSys. Complaint, at ¶ 7. According to Drexel's Complaint, shortly after this unsuccessful IPO, in early 1989, MicroGeneSys' chief executive officer, Frank Volvovitch ("Volvovitch"), requested that Drexel lend MicroGeneSys funds in order to meet its short-term cash needs. Drexel agreed to do so and, in February of 1989, the parties entered into the Note and Agreement, and Drexel delivered one million dollars to MicroGeneSys.

It is the timing of these events that supports a "strong inference" that MicroGeneSys intended to defraud Drexel when the transaction was made. According to the Complaint, Attorney Narwold explicitly stated that MicroGeneSys viewed the Note as payment to defendant for expenses it incurred during the failed IPO. Complaint, at ¶ 23. Since the IPO failed in 1988, it is logical to assume that these expenses were incurred in the same year, before the Note was executed in 1989. Thus, MicroGeneSys knew about the unsuccessful IPO and the expenses incurred when it entered into the Note and Agreement with Drexel. While this does not conclusively establish that MicroGeneSys intended to defraud Drexel at the time it executed the Note, it makes plausible Drexel's allegation that MicroGeneSys executed and delivered the Note with the present intention not to repay it. *See Luce v. Edelstein,* 802 F.2d at 56 (plausible allegations that defendants made specific promises to induce a securities transaction while secretly intending not to carry them out or knowing they could not be carried out, and that they were not carried out, are sufficient to state a claim for relief under Section 10(b)); *see also Zucker v. Katz,* 708 F.Supp. at 530 (plaintiff's allegation that defendant never intended to perform may satisfy the scienter pleading requirements as long as the

allegation is plausible under the circumstances). In addition, the Complaint alleges no event occurring between the execution of the Note and Attorney Narwold's statement that would indicate that MicroGeneSys' decision not to repay was reached two years after the failed IPO.

■ Moreover, to satisfy the scienter requirement it is not necessary for Drexel to allege that Attorney Narwold was involved in the negotiations of the Note in 1989, or that he represented MicroGeneSys in its prior dealings with Drexel. Nor is it necessary to allege that Narwold had knowledge of MicroGeneSys' intention at the time of execution of the Note. Drexel's Complaint alleges that Narwold was involved in a discussion with plaintiff's counsel regarding repayment of the Note, and spoke on the defendant's behalf during that discussion. Thus, it is permissible to infer that MicroGeneSys had informed Narwold, defendant's outside litigation counsel, of the relevant details surrounding the transaction that took place in February of 1989.

■ MicroGeneSys suggests that Drexel's Complaint cannot create a "strong inference" of fraud because the only factual basis for its fraud claims is Narwold's statement, which was made during settlement discussions and may not be admissible at trial. It is well settled, however, that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957). "Accordingly, doubt as to a party's ability to prove his

case, no matter how unlikely it seems he will be able to prove it, is no reason for dismissing his pleadings for failure to state a claim upon which relief can be granted." *Raine v. Lorimar Productions, Inc.,* 71 B.R. 450 (S.D.N.Y.1987) (citing *Walker Distributing Co. v. Lucky Lager Brewing Co.,* 323 F.2d 1, 4 (9th Cir.1963); *Carnivale Bag Co. Inc. v. Slide Mfg. Corp.,* 395 F.Supp. 287, 291 (S.D.N.Y.1975)).

## II. Claim under § 12(2) [4]

MicroGeneSys has also moved to dismiss Drexel's third claim (based on § 12(2) of the Securities Act [15 U.S.C. § 77*l*(2)]), for failure to state a claim, and failure to allege fraud with particularity.

■ The Second Circuit has determined that actions brought under Section 12(2) of the Securities Act "do not require a showing by the plaintiff of any kind of scienter on the part of defendant." *Wigand v. Flo–Tek, Inc.,* 609 F.2d 1028, 1034 (2d Cir.1979) (citing *Franklin Savings Bank of New York v. Levy,* 551 F.2d 521, 526, 527 (2d Cir.1977). Section 12(2) liability may result from negligent conduct, misstatements or omissions. *Billet v. Storage Technology Corp.,* 72 F.R.D. 583, 585 (S.D.N.Y.1976). To the extent that plaintiffs need not allege fraud or scienter in actions brought under Section 12 of the Securities Act, Rule 9(b) is inapplicable. *Id.*

If a Section 12(2) claim is based on fraud, however, that claim must comply with the pleading requirements of Rule 9(b). *Moran v. Kidder Peabody & Co.,* 609 F.Supp. 661, 666 (S.D.N.Y.1985), *aff'd,* 788 F.2d 3

---

**4.** Section 12(2) of the Securities Act provides:

Any person who—

(2) offers or sells a security (whether or not exempted by the provisions of section 3 [15 USCS § 77c], other than paragraph (2) of subsection (a) thereof), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they

were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

(2d Cir.1986); *see also In re Chaus Securities Litigation,* [1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,646 at 98,003, 1990 WL 188921 (S.D.N.Y. Nov. 20, 1990).

Here, Drexel's third claim, which alleges a violation of Section 12(2) of the Securities Act, sounds in fraud; the Complaint must therefore satisfy the pleading requirements of Rule 9(b). The basis for the Court's conclusion is two-fold. First, the alleged material omission by MicroGeneSys is the same that Drexel generally refers to earlier in the Complaint, specifically, in Drexel's first and second § 10(b) claims. *See Moran v. Kidder Peabody & Co.,* 609 F.Supp. at 666 (it may be assumed that a claim under § 12 sounds in fraud if the alleged misstatements are those generally referred to earlier in the complaint). In both its § 10(b) and § 12(2) claims, Drexel alleges the omission of the same material fact, namely, that MicroGeneSys failed to disclose its intention not to repay the Note.

Second, Drexel can only be alleging fraud, as opposed to negligent or unintentional conduct, when it identifies the material omission as follows:

> In connection with the sale of such security, defendant never notified plaintiff of its then present intent not to repay the Note.

Complaint, at ¶ 37. By defining the material omission as MicroGeneSys' failure to disclose its intent not to repay the Note, Drexel is claiming that MicroGeneSys' "intent to defraud was a material fact that should have been disclosed to Drexel." Defendant's Reply Memorandum to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, at 14. Since it is unreasonable to suggest that MicroGeneSys negligently or unintentionally failed to disclose its intent to defraud or not repay the Note, Drexel's claim sounds in fraud and Drexel must satisfy the pleading requirements of Rule 9(b). Thus, Drexel must allege facts that create at least a "strong inference" that MicroGeneSys knew of the existence of a misrepresentation or material omission in a prospectus or oral communication in connection with the sale of a security. *See Devaney v. Chester,* 813 F.2d 566 (2d Cir.

1987) (court dismissed claim based on § 12(2) of the Securities Act for failure to plead the events which gave rise to an inference of knowledge).

In this case, Drexel adequately alleges scienter. As in the § 10(b) claims discussed above, Attorney Narwold's statement creates a "strong inference" that MicroGeneSys knew it was defrauding Drexel.

III. State Law Claims

Since Drexel's federal law claims have not been dismissed pursuant to Rule 12(b)(6) or Rule 9(b), this Court will retain pendent jurisdiction over Drexel's state law claims. Pendent jurisdiction exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority," U.S. Const. art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Before a federal court exercises pendent jurisdiction, however, it must determine that the state and federal claims derive from a common nucleus of operative fact. *Id.* If a court finds that a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, the federal court has the power to hear all the claims. *Id.*

In this case, Drexel's state claims arise out of the Agreement and Note that serve as the basis for its federal claims. Thus, this court has the power to exercise pendent jurisdiction over the state claims.

CONCLUSION

For the reasons set forth above, MicroGeneSys' motion, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, for an order dismissing Drexel's § 10(b), § 12(2) and common law claims for failure to state a claim and failure to plead fraud with particularity is denied. Defendant shall file its answer

within the time provided for under Rule 12(a)(1).

SO ORDERED.