**Ralph MANELA, Debra Gallaro, and Daniel Venditto, Individually and Derivatively on behalf of Triumph Ventures, Inc., Plaintiffs,**

v.

**Allen GOTTLIEB, Benjamin Marcovitch, Privat Capital Corp., McLaughlin & Stern, Ballen and Ballen, and Leon Lipkin, Defendants.**

No. 91 Civ. 5510 (RPP).

United States District Court, S.D. New York.

Feb. 10, 1992.

Silverman, Collura & Chernis, P.C. by Paul Chernis, Ronald Balzano, New York City, for plaintiffs.

McLaughlin & Stern, Ballen and Ballen by Leon Lipkin, David Etkind, pro se.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action alleging violations of the federal securities laws and various state law claims sounding in fraud, breach of fiduciary duty, and breach of contract. Two of the defendants move jointly to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion to dismiss is granted.

## BACKGROUND

### I. THE TRANSACTION

Based on the allegations in the Complaint, this action arises from a 1990 acquisition transaction (the "Acquisition") between Plaintiff Triumph Ventures, Inc. ("Triumph") and Defendant Privat Capital

Corporation ("Privat"). Triumph, a Delaware corporation with offices in New York, was the purchaser in the Acquisition, and Privat, also a Delaware corporation with offices in New York, was the seller in the Acquisition.

Plaintiffs Ralph Manela, Debra Gallaro, and Daniel Venditto (the "individual plaintiffs") were the principal shareholders of Triumph prior to the Acquisition, and they continue to hold some Triumph shares. Manela was Triumph's president, treasurer, and board chairman, and Venditto was a Triumph officer and director. Randall Perry, not a party to this action, is an attorney who represented Triumph and is escrow agent in connection with the Acquisition.

Defendant McLaughlin & Stern, Ballen and Ballen ("MSBB") is a New York law firm which represented Privat in connection with the Acquisition. Defendant Leon Lipkin is a lawyer at MSBB and was the attorney primarily responsible for work in connection with the Acquisition. Defendant Allen Gottlieb is an attorney who served as special counsel to MSBB in relation to the Acquisition. Prior to the Acquisition, Gottlieb was an officer and director of Privat, and after the Acquisition, he became an officer, director, and controlling person of Triumph. Defendant Benjamin Marcovitch was the former president and director of Privat, and, following the Acquisition, he became president, board chairman, and controlling person of Triumph.

At the June 19, 1990 Closing of the Acquisition, Manela and Venditto, for Triumph, and Gottlieb and Marcovitch, for Privat, signed an "Agreement of Purchase and Sale (Assets)" (the "Agreement"). Pursuant to the Agreement, Privat would convey to Triumph its assets and business, represented to be medical receivables of a face value in excess of $20 million, subject only to certain "Assumed Liabilities."[1] In return, Triumph would issue to Privat 89.5% of its outstanding common stock. The transaction required that at the Clos-

---

**1.** The "Assumed Liabilities" consisted of two promissory notes payable by Triumph to Privat as seller. These notes entitled Privat to receive (1) 50% of all money collected from the receiva-

bles up to a maximum of $5 million, and (2) 50% of the remaining receivables up to a maximum of $5 million.

ing, Triumph have in its corporate bank account at least $100,000, less certain defined expenses. It appears that the transaction was structured such that this cash would be used to pay expenses incurred in attempting to collect, evidently as a collection agent, the medical receivables of various doctors or medical institutions totalling $20 million.

At the Closing, Manela and Venditto resigned their positions as officers and directors of Triumph. Manela, Gallaro, and Venditto returned 874,000 shares of Triumph stock to Triumph for retirement, ensuring that upon completion of the transaction Privat or its designee would control 89.5% of Triumph's outstanding common stock. In return, Triumph issued warrants to the individual plaintiffs entitling them to repurchase 874,000 shares for 5 years at an exercise price of $1 per share.

The Agreement provided that, as security for the faithful performance of its obligations in the Agreement, Privat would deposit in escrow, subject to some conditions (which are indecipherable due to the illegibility of portions of the Exhibit to the Plaintiffs' Complaint): (1) one half of the first $400,000 collected from the medical receivables, and (2) the Triumph shares of common stock designated for Privat, together with a suitable pledge/escrow agreement and a stock power to be executed in blank with respect to said shares.[2] The Agreement also required Privat: to present at closing certain due diligence documentation to Triumph; to present audited financial statements, including audits of the medical receivables, to Triumph within 60 days after the closing of the transaction; and after the closing to file with the Securities and Exchange Commission ("SEC") a post-effective amendment to Triumph's registration statement.

## II. PLAINTIFFS' CLAIMS

Plaintiffs' Complaint is prolix, vague, unorganized, and repetitive. Nevertheless, the Court reads Plaintiffs' allegations as follows.

Plaintiffs claim that the entire transaction was a "pure scam" in that Privat represented that it owned the $20 million of medical receivables or any other assets or business. The Complaint alleges that there was a plan, scheme, and conspiracy between Gottlieb and Marcovitch, aided and abetted by MSBB and Lipkin, to defraud the Plaintiffs. Pursuant to this conspiracy, Gottlieb, Marcovitch, and Privat, aided and abetted by MSBB and Lipkin, made materially false and misleading statements. These statements fraudulently induced the individual plaintiffs to turn over control of Triumph and its cash balance by divesting themselves of their controlling shares and by resigning as Triumph's officers and directors. The Defendants are also alleged to have engaged in certain actions after the Closing which were a subterfuge and cover-up of their fraud, designed to lull Plaintiffs into inaction and to deter them from commencing litigation.

Plaintiffs charge that Privat breached the Agreement in that, among other things, it:

(1) never deposited with the escrow agent any of the required funds;[3]

(2) never delivered to the escrow agent the pledge/escrow agreement or stock power certificate;

(3) never presented the required audits;

(4) never filed with the SEC a Post-effective Amendment to Triumph's registration statement; and

(5) never provided Triumph, the individual plaintiffs, or their counsel with required due diligence documentation.

Plaintiffs' claims against MSBB and Lipkin rest on the theories that they aided and abetted the fraud perpetrated by the other defendants, that they made intentional and negligent misrepresentations to Defendants, that they breached a duty of care which they owed to Triumph as a prospective client, and that they breached warranties made to Plaintiffs. Specifically, eight

---

**2.** The Agreement is attached to the Complaint and is considered a part thereof.

**3.** Whether the conditions for such deposit were fulfilled is not alleged.

of the Plaintiffs' claims are directed at MSBB and Lipkin:

(1) violation of § 12(2) of the Securities of the Securities Act of 1933 ("the Securities Act), 15 U.S.C. § 77*l*(2);

(2) violation of § 17(a) of the Securities Act, 15 U.S.C. § 77q(a);

(3) violation of § 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10(b)5;

(4) common law fraud;

(5) breach of warranty;

(6) intentional and negligent misrepresentation;

(7) rescission; and

(8) common law negligence and legal malpractice.

MSBB and Lipkin move jointly to dismiss the Complaint, or, in the alternative, for summary judgment. The Court has excluded all matters outside of the pleadings and so does not convert the motion to dismiss to one for summary judgment. *See Kopec v. Coughlin*, 922 F.2d 152, 154–155 (2d Cir.1991). Because the motion to dismiss is granted, the Court does not reach the motion for summary judgment.

## DISCUSSION

### I. § 17(a) CLAIM

■ This Court has previously held that there is no private right of action under § 17(a) of the Securities Act of 1933. *Epstein v. Haas Securities Corp.*, 731 F.Supp. 1166, 1180 (S.D.N.Y.1990). *Accord Varnberg v. Minnick*, 760 F.Supp. 315, 324 (S.D.N.Y.1991). Therefore, the motion pursuant to Rule 12(b)(6) to dismiss this claim is granted.

### II. § 12(2), § 10(b) AND Rule 10b–5, COMMON LAW FRAUD, AND INTENTIONAL MISREPRESENTATION CLAIMS

Plaintiffs' § 12(2), § 10(b) and Rule 10b–5, common law fraud, and intentional mis-

representation claims sound in fraud, and therefore must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and any other condition of mind of a person may be averred generally.

■ As interpreted by the Second Circuit and courts of this district, Rule 9(b) places strict requirements on pleadings of fraud. A pleader may not allege fraud on the basis of information and belief.[4] *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). Rule 9(b) also requires plaintiffs to plead fraud with specificity by indicating: (1) precisely what statements or omissions were made, and in what documents or through what oral representations those statements were made, (2) the time and place of each such statement and the persons responsible for making (or, in the case of omissions, for not making) each such statement, (3) the content of such statements and the manner in which the statements misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. *Lasky v. Shearson Lehman Brothers, Inc.*, 139 F.R.D. 597 (S.D.N.Y.1991), *citing Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 420–1 (S.D.N.Y.1978). *See also Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *Moran v. Kidder Peabody & Co.*, 609 F.Supp. 661 (S.D.N.Y.1985), *aff'd* 788 F.2d 3 (2d Cir. 1986). Furthermore, when fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant. *Zerman v. Ball*, 735 F.2d 15, 22 (2d Cir.1984).

■ Plaintiffs have failed to heed the pleading requirements of Rule 9(b). Many of the 140 allegations in the Complaint are made on information and belief. Those

---

**4.** When facts are peculiarly within the knowledge of the opposing party, however, fraud allegations may be alleged upon information and belief, and then the allegations must be accompanied by a statement of the facts upon which the belief is based. *DiVittorio*, 822 F.2d at 1247.

which are not do not address actions taken or statements made by either Lipkin or MSBB with the requisite specificity. Furthermore, many of the allegations are made against multiple defendants lumped together and fail to distinguish among them. Accordingly, Plaintiffs' § 12(2),[5] § 10(b) and Rule 10b–5, common law fraud, and misrepresentation claims as to Lipkin and MSBB are dismissed for failure to comply with Rule 9(b).

## III. STATE LAW CLAIMS

■ Having dismissed all of Plaintiffs' federal law claims, only state law cause of action against MSBB and Lipkin remain. The decision to dismiss these claims or to retain them pursuant to supplemental jurisdiction is committed to the district court's sound discretion.[6] Title 28 U.S.C. § 1367 provides, in part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

\* \* \* \* \* \*

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

\* \* \* \* \* \*

(3) the district court has dismissed all claims over which it has original jurisdiction.

Because there is not complete diversity of citizenship between all Plaintiffs and all Defendants, the only bases for the Court's original jurisdiction were Plaintiffs' federal law claims. 28 U.S.C. §§ 1331 and 1332. Having dismissed those claims as to MSBB and Lipkin, the Court now declines to exercise jurisdiction over the remaining state law claims alleged against those defendants. 28 U.S.C. § 1367(c)(3).

## IV. RULE 11 MOTION FOR SANCTIONS AND ATTORNEYS' FEES

MSBB and Lipkin move pursuant to Rule 11 of the Federal Rules of Civil Procedure for sanctions against Plaintiffs' counsel. The Complaint is so poorly drafted, being both redundant and overly complex, that the Court is unwilling to make a finding that counsel failed to conduct reasonable factual inquiry as to these claims. Accordingly, the motion for sanctions is denied.

## V. MOTION TO REQUIRE PLAINTIFFS TO POST AN UNDERTAKING

The motion to require Plaintiffs to post an undertaking pursuant to § 11(e) of the Securities Act is similarly denied. In view of the poorly drafted Complaint, the Court cannot be sure that Plaintiffs' claims are "without merit" or "bordering on frivoli-

---

5. If a § 12(2) claim is based on allegations of fraud, the claim must comply with Rule 9(b). *Drexel Burnham Lambert Group, Inc. v. Microgenesys, Inc.,* 775 F.Supp. 660 (S.D.N.Y.1991) (where allegations with respect to § 12(2) claim were identical to those alleged with respect to § 10(b) claim, and where § 12(2) claim alleged intentional misstatement of fact, § 12(2) claim sounded in fraud). *See also Moran, supra.*

Here, Plaintiffs' § 12(2) claim is based on the same alleged misstatements and omissions as those with respect to Plaintiffs' explicit fraud claims. Accordingly, the § 12(2) claim sounds in fraud, and the pleading requirements of Rule 9(b) apply.

6. The availability of pendent party jurisdiction in the absence of specific Congressional authority was seriously questioned in *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). Congress specifically rejected the holding of *Finley* by enacting the Judicial Improvements Act of 1990, 1990 Pub.L. 101–650, § 310, 104 Stat. 5089, 5113–14 (1990) (codified at 28 U.S.C. § 1367), which codified the concepts of ancillary and pendent jurisdiction, renaming them "supplemental jurisdiction." *See Estate of Bruce v. City of Middletown,* 781 F.Supp. 1013 (S.D.N.Y.1992).

ty." *Klein v. Shields & Co.*, 470 F.2d 1344, 1347 (2d Cir.1972).

## CONCLUSION

The joint motion of MSBB and Lipkin to dismiss is granted. Plaintiffs are granted leave to file an amended complaint within 30 days from the date of entry of this Opinion and Order.

IT IS SO ORDERED.